OCCUPY SACRAMENTO,
et al., Plaintiffs,

v.

CITY OF SACRAMENTO,
et al., Defendants.

No. 2:11–cv–02873–MCE–GGH.

United States District Court,
E.D. California.

July 10, 2012.

Mark E. Merin, Law Office of Mark E. Merin, Sacramento, CA, for Plaintiffs.

Brett M. Witter, Sacramento City Attorney's Office, Sacramento, CA.

*MEMORANDUM AND ORDER*

MORRISON C. ENGLAND, JR., District Judge.

Before the Court is Defendant City of Sacramento's (the "City") Motion to Dismiss and Strike Plaintiffs' First Amended Complaint (ECF No. 23) ("MTD").[1] For the reasons that follow, the Motion is GRANTED without leave to amend.

### BACKGROUND [2]

Plaintiffs "Occupy Sacramento"—which is an unincorporated association aligned with the "Occupy Wall Street" movement—as well as individual members of Occupy Sacramento, allege that since the first week of October 2011 they have been assembling and associating in Sacramento's Cesar Chavez Plaza Park ("the Park") for the purpose of engaging in political expression.[3] (First Amended Complaint ("FAC"), ECF No. 9 ¶¶ 3, 4, 6–9.) Plaintiffs state that they have chosen to assemble in the Park because "it is central to public transportation, symbolically located opposite City Hall and because it is the historic site for peaceable assemblies and free speech." (*Id.* at ¶ 9.) They desire to assemble and to communicate on a continuous basis, around the clock on a twenty-four hour a day basis for an indefinite period of time. (*Id.* at ¶ 10.) Specifically, Plaintiffs argue that a continuous presence in the Park is necessary both to communicate their message to people in the local area, as well as to communicate with other "Occupy" groups across the country and around the world. (*Id.* at ¶¶ 9–10.)

Plaintiffs contend that Sacramento City Code § 12.72.090 prohibits themselves and others from remaining in the Park after 11:00 p.m. and before 5:00 a.m. each weekday, and after midnight and before 5:00 a.m. on weekends. (*Id.* at ¶ 11.) They reproduce § 12.72.090 in full, which provides:

> **12.72.090   Remaining or loitering in parks during certain hours prohibited.**
>
> A.   No person shall remain or loiter in any public park:
>
> 1.   Between the hours of midnight Friday or Saturday and five a.m. of the following day;  and
>
> 2.   Between the hours of eleven p.m. Sunday through Thursday and five a.m. of the following day.
>
> B.   The prohibitions contained in subsections (A)(1) and (A)(2) of this section shall not apply:
>
> 1.   To any person on an emergency errand;

---

1.   Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefing. E.D. Cal. R. 230(g).

2.   Except as otherwise noted, the following facts are taken from Plaintiff's FAC (ECF No. 9.) Page references to documents filed in this case will be to the Court's ECF pagination.

For the purposes of this Motion, the Court accepts Plaintiff's facts as true and makes all inferences in the light most favorable to Plaintiff.

3.   Cesar Chavez Plaza Park is a community park, approximately 2.5 acres in size, in downtown Sacramento located across the street from City Hall.

2. To any person attending a meeting, entertainment event, recreation activity, dance or similar activity in such park provided such activity is sponsored or co-sponsored by the department of parks and community services or a permit therefor has been issued by the department of parks and community services;

3. To any person exiting such park immediately after the conclusion of any activity set forth in subsection (B)(2) of this section;

4. To any peace officer or employee of the city while engaged in the performance of his or her duties.

C. The director, with the concurrence of the chief of police, may designate extended park hours for any park when the director determines that such extension of hours is consistent with sound use of park resources, will enhance recreational activities in the city, and will not be detrimental to the public safety or welfare. The prohibitions contained in subsections (A)(1) and (A)(2) of this section shall not apply to any person present in a public park during extended park hours designated pursuant to this subsection.

D. The chief of police, with the concurrence of the director of parks and community services, may order any park closed between sunset and sunrise when he or she determines that activities constituting a threat to public safety or welfare have occurred or are occurring in the park and that such closing is necessary to protect the public safety or welfare. At least one sign designating the sunset to sunrise closing shall be installed prominently in the park. When a park is ordered closed between sunset and sunrise, it is unlawful for any person to remain or loiter in said park during said period. (Prior code § 27.04.070).

(*Id.*)

Plaintiffs state that on October 7, 2011, shortly after 11:00 p.m., and on succeeding nights up to and including the date the FAC was filed, members of the City's Police Department ordered Plaintiffs and others out of the Park at the closing times designated in § 12.72.090. (*Id.* at ¶¶ 11, 12.) Plaintiffs contend that any Occupy Sacramento members who remained were arrested pursuant to § 12.72.090. (*Id.* at ¶ 12.) They contend that as a result of the City's enforcement of § 12.72.090, their "peaceable assembly was disrupted and Plaintiffs are afraid to exercise their constitutional rights to peaceably assemble, to engage in constitutionally protected activity, to engage in political speech, to petition the government for redress of grievances, to freely associate with other likeminded citizens in Cesar Chavez Park" after the hours set forth in § 12.72.090. (*Id.* at ¶ 12.)

Specifically, they contend they are afraid their liberty will be arrested if they remain the Park after hours. (*Id.* at ¶ 13.)

Plaintiffs also assert that "the City routinely sponsors and/or co-sponsors events which are held after the hours specified in city code section 12.72.090, and there are no standards by which determinations are made and discretion is exercised as to which events are permitted to be held after such hours." (*Id.* at ¶ 12.) Further, they contend that "Occupy Sacramento, through its counsel, has requested permission from Defendants to remain in Cesar Chavez Park after park hours but Defendants have failed and refused to grant such permission." (*Id.*)

On October 6, 2011, Plaintiffs' counsel, Mark Merin, first sought a temporary restraining order ("TRO") from the Sacramento County Superior Court that would prevent the City from enforcing the City Code "as it pertains to illegal camping (Sacramento City Code Chapter 12.52) and loitering in parks between the hours of 11:00 p.m. and 5:00 a.m. (Sacramento City Code Section 12.72.090)." (Request for Judicial Notice, ECF No. 23, Ex. A (Oct. 7, 2011, Superior Court Order) at 5.) [4]

Following oral argument, which occurred at 8:30 p.m. on October 6, the Superior Court concluded that the petitioner had failed to establish that it would suffer irreparable harm absent the TRO, "as the demonstration could be held during normal park hours" and the court doubted whether petitioner could succeed on the merits. (*Id.* at 5–6; Ex. B at 9.) Furthermore, the Superior Court held that the petitioner had not reasonably attempted to apply for a permit to use the park until October 6, and therefore failed to exhaust administrative remedies. (*Id.;* RJN Ex. B at 9.)

On November 1, 2011, Plaintiffs filed this action, seeking declaratory judgment, a TRO, preliminary and permanent injunctive relief, as well as damages and attorneys' fees. (*See* ECF No. 1 (original complaint)). The Court issued an abbreviated briefing schedule with the TRO hearing scheduled for November 3. (*See* ECF No. 8.) The parties timely filed their Opposition and Reply and, on November 2, Plaintiffs filed their FAC. (ECF No. 9.)

On Thursday, November 3, the Court held a hearing on Plaintiffs' Motion for TRO. (*See* November 4, 2011, 2011 WL 5374748, Order, ECF No. 17). At the hearing, the Court orally denied the TRO motion, stating that a written order would follow. (*Id.* at 6.) On November 4, 2011, the Court issued its written Order.

In its Order, the Court noted that, at the TRO hearing, counsel for the parties had advised the Court that, earlier in the day on November 3, Plaintiffs had, apparently for the first time (despite the language in the Superior Court's Order suggesting otherwise), filed an application for an overnight use permit for the Park with the Department of Parks and Recreation and that the Parks Director had promised to review the application on an expedited basis and promised a decision by Monday, November 7.[5] (*Id.*) Despite this, Counsel had decided to proceed with the hearing. (*Id.*)

---

4. Pursuant to Federal Rules of Evidence 201(b) (authorizing judicial notice of adjudicative facts "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned"), Defendants request the Court take judicial notice of several documents. (Request for Judicial Notice ("RJN") (ECF No. 23, Exs. A–C.) Specifically, Defendants ask the Court to take judicial notice of: (1) The Sacramento Superior Court's October 7 and 12, 2011, Orders (Ex. A)); (2) this Court's November 4, 2011 Order (Ex. B) (*see also* ECF No. 17); and (3) a June 23, 1981, Sacramento City Council Staff Report (Ex. C). Defendants' requests are unopposed and are the proper subject of judicial notice. *See, e.g., Champlaie v. BAC Home Loans Servicing, LP,* 706 F.Supp.2d 1029, 1040 (E.D.Cal.2009); *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir.2001) (court may take judicial notice of matters of public record). Accordingly, Defendants' Request for Judicial Notice, (ECF No. 23), is granted.

5. It does not appear in their filings related to the Motion to Dismiss that the Parties have stated what the Parks Director's ultimate decision was as to the application for a parks use permit, however, it appears the Parks Director ultimately denied the application. *See* http://www.sacramentopress.com/headline/59847/Occupy_Sacramento_movement_expands_to_City_Hall_grounds (last visited July 3, 2012).

Turning to the parties' arguments regarding Plaintiffs' request for a TRO, The Court first determined that (1) denial of the TRO was warranted on the procedural ground that although the Superior Court had denied Plaintiffs' counsel's petition for a TRO on October 7, 2011 (*see* RJN Exs. A and B), Plaintiffs did not file their action in this Court until November 1, 2011, some twenty-five days later. (Order, ECF No 17 at 7–8.) The Court concluded that this constituted undue delay, as Plaintiffs could have sought injunctive relief in the interim. (*Id.* at 8–9.) Furthermore, the Court found that Plaintiffs had not demonstrated that they were pursuing their rights with City or state officials (e.g., seeking the aforementioned overnight use permit) in the interim. (*Id.*)

In addition, the Court found that Plaintiffs were not attempting to maintain the status quo, but to change it. (*Id.* at 10–12.) Specifically, the Court concluded that the status quo was the City's practice of enforcing of the Park hours pursuant to the approximately thirty year-old City Code § 12.72.090, whereas what Plaintiffs sought was to change the status quo in such a manner that the City would no longer enforce the statute. (*Id.* at 10–12.)

As to the substantive merits of Plaintiffs' claims, for the purpose of determining whether a TRO was warranted, the Court first noted that Plaintiffs had to meet the burdens of either *Winter v. Natural Resources Defense Council,* 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) (party requesting preliminary injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest") or *Alliance for Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131–36 (9th Cir.2011) (concluding that the

"serious questions" version of the sliding scale test for preliminary injunctions remains viable after *Winter*). (*Id.* at 7, 12–13, 129 S.Ct. 365.) The Court then analyzed Plaintiffs' First Amendment claims and determined that, for the purposes of the TRO under both the *Winter* or *Cottrell* standards, § 12.72.090 appeared to be a facially valid content-neutral time, place and manner restriction and that § 12.72.090 did not give the Director of the City parks unlimited discretionary authority, as Plaintiffs' contended. (*Id.* at 13–24, 129 S.Ct. 365.)

Thus, the Court concluded that no TRO was warranted as there did not appear to be a likelihood that Plaintiffs could succeed on either their facial or as applied challenges to § 12.72.090. (*Id.* at 24, 129 S.Ct. 365.)

Thereafter, on November 22, 2011, Plaintiffs withdrew their motion for a preliminary injunction (*see* ECF Nos. 18 and 19). Plaintiffs did not thereafter seek leave to amend their complaint.

On April 16, 2012, Defendants filed their Motion to Dismiss and Motion to Strike (ECF No. 23). In their Motion, Defendants generally argue that dismissal of Plaintiffs first three causes of action is warranted because § 12.72.090 is a facially valid reasonable time, place and manner restriction on speech, and it imposes constitutionally sufficient limitations on the Parks Director's authority to issue park use permits. (*Id.* at 4–9.) In addition, Defendants contend that, to the extent Plaintiffs are raising an "as applied" challenge, they have failed to sufficiently allege facts to support this claim. (*Id.* at 9–10.) Defendants also contend that Plaintiffs have failed to sufficiently allege a custom, practice or policy, for which the "official capacity" Defendants could be held liable. (*Id.* at 10–11.)

Defendants also argue that Plaintiffs cannot maintain their fourth cause of action, a "Bane Act" claim for money damages, as Plaintiffs have not made a claim to the City and had that claim rejected. (*Id.* at 11.)

Further, they allege the claims against the individual Defendants, John Shirley and Jim Combs, should be dismissed as redundant of the "official capacity" claims against the City. (*Id.* at 13–15.) Finally, as an alternative argument, Defendants move to strike any references to Plaintiffs' facial attack on § 12.72.090 on the basis that it is a valid time, place and manner restriction. (*Id.* at 14.)

## STANDARD FOR 12(b)(6) MOTION TO DISMISS

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir.1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations and quotations omitted). Though "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S.Ct. 1955 (internal citations and quotations omitted). A plaintiff's factual allegations must be enough to raise a right to relief above the speculative level.

*Id.* (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235–36 (3d ed. 2004) ("The pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Moreover, "Rule 8(a)(2) ... requires a 'showing,' rather than a blanket assertion of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Twombly*, 550 U.S. at 555, n. 3, 127 S.Ct. 1955 (internal citations omitted). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). If the "plaintiffs ... have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955; *Iqbal*, 556 U.S. at 680, 129 S.Ct. 1937.

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Rule 15(a) empowers the court to freely grant leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of ... the amendment, [or] futility of the amendment...." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Leave to amend is generally denied when it is clear the deficiencies of the complaint cannot be cured by amendment.

*DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir.1992); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1990) ("A complaint should not be

dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (internal citations omitted).

## ANALYSIS

### A. Counts 1–3: Alleging that City Code § 12.72.090 is Unconstitutional on its Face and as Applied

#### 1. Parties' Contentions

In Count One of their FAC, which seeks declaratory relief, Plaintiffs allege that § 12.72.090 is unconstitutional on its face and as applied under the First and Fourteenth Amendment on the basis that:

a. the law operates as an unconstitutional prior restraint on constitutionally protected expression;

b. the law abridges the right to freedom of speech and expression protected by the First Amendment;

c. the law abridges the right to freedom of assembly protected by the First Amendment;

d. the law abridges the right to petition the government for redress of grievances protected by the First Amendment;

e. the law confers standardless discretion on city officials to grant or deny permission to remain in Cesar Chavez Park after the hours stated in Sacramento City Code § 12.72.090;

f. the law is impermissibly overbroad;

g. the law is unconstitutionally vague;

h. the law deprives Plaintiffs of equal protection of the laws;

i. the law deprives Plaintiffs of their right to due process by imposing strict liability for engaging in innocent conduct;

j. the law is underinclusive;

k. the law is selectively and discriminatorily applied;

l. the law is overinclusive; and

m. the law operates to chill protected speech.

(FAC at 7.) In Count Two, Plaintiffs assert that Defendants' conduct has deprived and threatens to deprive Plaintiffs of their rights secured by the First and Fourteenth Amendments, and has caused and will cause irreparable harm to Plaintiffs for which there is no adequate remedy of law, thereby entitling them to a permanent injunction which precludes the City from enforcing § 12.72.090. (*Id.* at 8.) In Count 3, Plaintiffs contend that, as a result of the City's alleged violations of the First and Fourteenth Amendments, Plaintiffs are entitled to compensatory damages.

Defendants move to dismiss the first three counts of Plaintiffs' complaint on the basis that § 12.72.090 is a facially valid time, place and manner restriction on speech. (MTD at 4–9.) They contend that § 12.72.090 is content-neutral, narrowly-tailored to a significant government interest that leaves open adequate alternatives for Plaintiffs expression and limits the Parks Director's discretion. (*Id.*) They also contend that Plaintiffs have failed to sufficiently allege an "as-applied" challenge to § 12.72.090. (*Id.* at 9–10.)

#### 2. Standards

A facial challenge is a challenge to an entire legislative enactment or provision. *Foti v. City of Menlo Park,* 146 F.3d 629, 635 (9th Cir.1998) (explaining that a statute is facially unconstitutional if "it is unconstitutional in every conceivable application, or it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad"). "An as-applied First Amendment challenge contends that a given statute or regulation is unconstitutional as it has been applied to a litigant's particular speech activity." *Legal Aid*

*Servs. of Oregon v. Legal Servs. Corp.*, 608 F.3d 1084, 1096 (9th Cir.2010) (citing *Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 802–03, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)). The underlying constitutional standard is the same for both a facial and an as-applied challenge. (*Id.*)

The First Amendment states, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech, . . . or the right of people peaceably to assemble. . . ." U.S. Const. amend. I. The Supreme Court has held that the First Amendment's prohibitions also apply to state and local governments. *See Lovell v. City of Griffin*, 303 U.S. 444, 450, 58 S.Ct. 666, 82 L.Ed. 949 (1938).

Furthermore, "[t]he protections afforded by the First Amendment are nowhere stronger than in streets and parks, both categorized for First Amendment purposes as traditional public fora." *Berger v. City of Seattle*, 569 F.3d 1029, 1035–36 (9th Cir.2009) (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)). In such "quintessential public forums, the government may not prohibit all communicative activity. For the state to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry*, 460 U.S. at 45, 103 S.Ct. 948.

However, even in a traditional public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions "are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (quoting *Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984)). Notably, "narrowly tailored" does not mean the "least restrictive or least intrusive means of" achieving a government's legitimate content-neutral interests. *Ward*, 491 U.S. at 798, 109 S.Ct. 2746.

The level of scrutiny depends on whether the challenged ordinance is "related to the suppression of free expression." *Texas v. Johnson*, 491 U.S. 397, 403, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (internal quotation marks and citation omitted). "If a law hits speech because it aimed at it, then courts apply strict scrutiny; but if it hits speech without having aimed at it, then courts apply the *O'Brien* intermediate scrutiny standard." *Nordyke v. King*, 644 F.3d 776, 792 (9th Cir.2011) (citing *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)).

### 3. Analysis

#### a. City Code Section 12.72.090 is a facially valid reasonable time, place and manner restriction

##### (1) Content Neutral

■ "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward*, 491 U.S. at 791, 109 S.Ct. 2746 (citing *Cmty. for Creative Non–Violence*, 468 U.S. at 293, 104 S.Ct. 3065). Here, § 12.72.090 does not make reference to prohibiting any kind of speech or expression, its prohibition against remaining in the parks after certain hours merely regulates the hours that *anyone* can remain in City parks. The fact that § 12.72.090 applies to all Park users who

have not obtained a permit to remain in the Park supports the conclusion that it is content-neutral. *See Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002) (noting that a park ordinance that required a person seeking to hold an event involving more that fifty individuals, or engage in an activity, such as one involving amplified sound, to obtain a permit, was directed at "all activity conducted in a public park. The picnicker and soccer player, no less than the political activist or parade marshal, must apply for a permit if the 50–person limit is to be exceeded.").

Furthermore, the Court notes that the ordinance at issue here was enacted in the 1970s and has been in its present form since its amendment in 1981. (*See* ECF 23, Ex. C). The situation here is therefore significantly different from the one faced by "Occupation" demonstrators in some other cities where the demonstrators sought to obtain a TRO when officials sought to enact and enforce prohibitions or limitations on access to public land *after* the protests began. For example, in Nashville, Tennessee, officials allegedly enacted a policy *after* demonstrators began gathering in a public space that established a curfew and permit regulations on public land. There, a federal district court granted Plaintiffs a TRO. *See Keppler v. Haslam,* 2012 WL 589531, at *1 (M.D.Tenn.2012). Similarly, in Trenton, New Jersey, officials established rules prohibiting visitors to a memorial from bringing certain property onto the public land *after* Occupy demonstrators began congregating. There again, the court granted a TRO.[6]

The Nashville and Trenton cases are instructive because in both those cases, government officials enacted new prohibi-

tions on the use of public fora following the arrival of the "Occupy" protestors on public land. In contrast, here, § 12.72.090 predates the Occupy Sacramento demonstrations by roughly thirty years, there is no allegation that the City was not enforcing it prior to October 6, when Plaintiffs began congregating in the Park, and there is evidence that the City has been consistently enforcing the ordinance since the demonstrations started.

While § 12.72.090 does have the direct effect of limiting speech and expressive activities in City parks during those hours during which people are not permitted to remain or loiter in the parks, the Court notes that "reasonable time, place, or manner regulations normally have the purpose and direct effect of limiting expression but are nevertheless valid." *Cmty. for Creative Non–Violence,* 468 U.S. at 294, 104 S.Ct. 3065 (citation omitted). Here, Plaintiffs have not alleged any content-based purpose behind § 12.72.090, the Court finds there is none, and the Court concludes § 12.72.090 is content-neutral.

### (2) Narrowly Tailored

■ As the Supreme Court has noted, "any permit scheme controlling the time, place, and manner of speech must not be based on the content of the message, must be narrowly tailored to serve a significant governmental interest, and must leave open ample alternatives for communication." *Forsyth County, Ga. v. Nationalist Movement,* 505 U.S. 123, 130, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992).

Any such regulation of speech or speech-related conduct is overbroad-and therefore facially invalid-if it punishes a substantial amount of protected speech, " 'judged in relation to the regulation's plainly legitimate sweep.' " *Virginia v. Hicks,* 539

---

**6.** *See, e.g.,* "ACLU–NJ Wins Temporary Restraining Order in Favor of Occupy Trenton Protesters," States News Service, Nov. 7, 2011.

U.S. 113, 118, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003) (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)).

Here, Plaintiffs contend that § 12.72.090 is either over-broad or under-inclusive and is not "narrowly tailored" because it "denies the public an important venue for free speech and assembly during a substantial part of the night." (Plaintiffs' Opposition ("Opp."), ECF No. 24 at 8.) They argue that § 12.72.090 does not advance a legitimate government interest and they assert that a continuous around-the-clock presence in the Park for an indeterminate period of time is "a necessity of participation for some Occupy Sacramento protesters." (*Id.* at 11.) Plaintiffs also attempt to distinguish this case from similar time, place and manner cases by arguing that the purpose of the hours restriction cannot be for crowd control, or because the park may be dangerous, and they ask that if the purpose is for public health and safety, why doesn't the ban extend to all streets and sidewalks. (*Id.* at 10–11.) Plaintiffs do not, however, provide any evidence that suggests the purpose of the challenged section.

■ Defendant Jim Combs, the current Director of Sacramento's Department of Parks and Recreation, filed a declaration in opposition to Plaintiffs' request for a TRO, in which he stated, among other things, that the City's park use regulations are:

> intended to ensure the ability of the general public to enjoy the park facilities, to ensure the viability and maintenance of those facilities, to protect the public's health, safety and welfare, and to protect the City's parks and public property from overuse and unsanitary conditions, including but not limited to, camping and overnight sleeping activi-

ties in City parks not specifically designed for those purposes.

(Decl. of Jim Combs ("Combs Decl."), ECF No. 13 at 2.) Plaintiffs contend that Combs' opinions should be given no weight because the regulations were enacted twenty-six years before his tenure as Parks Director began, so his opinion is just a post hoc rationalization and should be ignored by the Court. (Opp., ECF No. 24 at 9–10.)

The Court disagrees. Plaintiffs offer only speculation as to the alleged expression-stifling purpose of § 12.72.090, whereas the Parks Director's declaration is consistent with the text of the City Code, which notes that the purpose of Section 27 "is to promote the safety, comfort, and convenience of the public's use and enjoyment of any park ..." (*see* ECF No. 23, Ex. C at 26), and which contains numerous limitations and prohibitions on specified activities in the parks for health and safety reasons (*see id.* at 29–32), as well as the 1981 staff report, which establishes that the 1981 amendments are "to better accommodate use and to mitigate interference with the general public's enjoyment of park facilities and buildings" (*id.* at 39). In short, the Court finds the Parks Director's statement of the purpose for the park use regulations to be persuasive and compelling.

On the other hand, Plaintiffs argument that § 12.72.090 is either over-broad or under-inclusive and is not narrowly-tailored is not compelling. The ordinance is limited to City parks and limited to five or six hours a day between the hours of 11:00 p.m. and 5:00 a.m.

Section 12.72.090 does not prevent Plaintiffs from conducting their expressive activities twenty-four hours a day on adjoining sidewalks or in other public spaces if they so choose. It just prevents them from doing so by remaining in City parks

after the hours established by the ordinance if they do not have a permit to do so. It is therefore not overbroad. Neither is it under-inclusive. The fact that § 12.72.090 applies to parks and not to sidewalks or other public places does not lead inevitably to the conclusion that the hours restrictions are intended to stifle free expression in City parks, as Plaintiffs imply.

As the Court noted in its Order denying Plaintiffs' request for a TRO, the Supreme Court's reasoning in *Cmty. for Creative Non-Violence* particularly informs the Court's views of the challenged Sacramento City Code section here. (ECF No. 17 at 17–18) At issue in *Cmty. for Creative Non-Violence* were regulations that stated that camping in national parks is permitted only in campgrounds designated for that purpose. 468 U.S. at 289–92, 104 S.Ct. 3065. There, the plaintiffs wanted to camp in Lafayette Park (which is located in Washington, D.C., across the street from the White House) and on the National Mall to demonstrate in support of the plight of the homeless, however neither of these public parks were designated campgrounds under the particular regulations at issue. *Id.* at 291–92, 104 S.Ct. 3065. In challenging these regulations, the plaintiffs argued, among other things, that they violated the First Amendment. *Id.* at 293, 104 S.Ct. 3065.

The Supreme Court, however, found that the regulations were content-neutral time, place or manner restrictions. *Id.* at 295, 104 S.Ct. 3065. Although the Court agreed that the tents and the act of sleeping out could all potentially be expressive activity and that the regulation at issue

prohibited those activities in Lafayette Park or on the Mall, the Court nonetheless noted that the regulations were narrowly tailored to serve the substantial government interest in "the parks in the heart of the Capital in an attractive and intact condition, readily available to the millions of people who wish to see and enjoy them by their presence. To permit camping would be totally inimical to these purposes." *Id.* at 296, 104 S.Ct. 3065. The Court also noted that if it were to find the regulation was invalid on First Amendment grounds, "there would be other groups who would demand permission to deliver an asserted message by camping in Lafayette Park" and that this "would present difficult problems for the Park Service." *Id.*

Although camping is not directly at issue in this case, as Plaintiffs contend they will be conducting around-the-clock speech and expressive conduct, the Court finds the City's interests at issue here are substantially similar to the government interests that were found to be constitutionally sufficient in *Cmty. for Creative Non-Violence*.[7] Specifically, the City has a substantial interest in ensuring and protecting the: (1) ability of the general public to enjoy the park facilities, (2) viability and maintenance of those facilities, (3) public's health, safety and welfare, and (4) City's parks and public property from overuse and unsanitary conditions. (*See* Combs Decl., ECF No. 13 at 2.) A regulation that prohibits the public's use of the parks for five to six hours a day—in the middle of the night—serves these interests. The Court therefore concludes that § 12.72.090 is both narrowly tailored and that it serves a substantial government interest.

---

7. Although not directly at issue, the Court notes that Plaintiffs, as part of their activities would, presumably, also be sleeping and camping in the Park. Although that issue was not raised in this action, Plaintiffs' counsel, in

his October 6, 2011, state court petition for a TRO did seek to prevent the City from enforcing its prohibition on illegal camping (City Code § 12.52), as well as from enforcing § 12.72.090. (*See* ECF No. 23, Ex. A at 5.)

### (3) Alternatives for Expression

■ Plaintiffs contend that by closing the park to the public for five to six hours every night, they have been deterred from, and must refrain from, engaging in their expressive activities. (FAC, ECF No 9 at ¶¶ 8–14.) Plaintiffs generally argue that for the purposes of solidarity, to reach the maximum number of passer-by, as well as to communicate with people around the nation and around the world, they need to maintain a continuous presence in the Park. (*Id.*)

However, contrary to Plaintiffs' assertions, they are not prevented from maintaining a continuous presence in the area, or from continuing their communications around the clock: § 12.72.090 just prohibits them from remaining in City parks after the hours established by the ordinance if they do not have a permit to do so. For eighteen to nineteen hours a day, Plaintiffs may engage in their activities in the Park. After park hours, for five or six hours a night, Plaintiffs may continue their expressive activities on the streets and sidewalks or other public fora.

### (4) Sufficient Guidelines for the Parks Director

Plaintiffs argue that § 12.72.090 gives the Parks Director "unbridled discretion" to permit the after-hours use of the Park and contains "no standards" governing the Park Director's discretion." (*See* FAC, ECF No. 9 at 6; Opp., ECF No. 24 at 7–8.) Plaintiffs contend that the Parks Director "may sponsor or cosponsor after-hours park activities, without restriction, and persons attending such activities are exempt from the park closure rules." (Opp. at 7. (citing § 12.72.090(B)(2).) In addition, with the concurrence of the Chief of Police, the Parks Director may extend park hours when he determines " 'that such extension of hours is with sound use

of park resources, will enhance recreational activities in the city, and will not be detrimental to the public safety or welfare.' " (*Id.* at 7–8 (quoting § 12.72.090(C).)

Where the licensing official enjoys unduly broad discretion in determining whether to grant or deny a permit, there is a risk that he will favor or disfavor speech based on its content." *Thomas,* 534 U.S. at 323, 122 S.Ct. 775 (citing *Forsyth County,* 505 U.S. at 131, 112 S.Ct. 2395). The underlying concern is that "in the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *City of Lakewood v. Plain Dealer Pub. Co.,* 486 U.S. 750, 757, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) "Therefore, a facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers." *Id.* at 759, 108 S.Ct. 2138. Thus, the Supreme Court has "required that a time, place, and manner regulation contain adequate standards to guide the official's decision and render it subject to effective judicial review." *Thomas,* 534 U.S. at 323, 122 S.Ct. 775. However, where the official's discretion is limited and is guided by "narrowly drawn, reasonable and definite standards," *see Forsyth County,* 505 U.S. at 133, 112 S.Ct. 2395 (internal quotation marks omitted), and is therefore "subject to effective judicial review," *Thomas,* 534 U.S. at 323, 122 S.Ct. 775, it may be upheld.

In *Thomas,* the Supreme Court addressed the issue of whether Chicago Park District officials had unduly broad discretion in determining whether to grant or deny a permit to use a municipal park. 534 U.S. at 317–18, 122 S.Ct. 775. Under

the challenged city ordinance, the Park District was given discretionary authority to deny a permit on several specified grounds. *Id.* at 318–20, 122 S.Ct. 775. The petitioners contended that the criteria set forth in the ordinance were insufficiently precise because they gave the Park District discretionary authority to deny applications rather than specific grounds on which the application must be denied. *Id.* at 324, 122 S.Ct. 775. The Supreme Court, however, concluded that the Park District's discretion was not overbroad and upheld the ordinance. *Id.* at 325, 122 S.Ct. 775.

■ Here, Plaintiffs' do not directly address the Park Director's licensing authority to grant or deny permits to use City parks. Rather, they expend the majority of their argument on the Park Director's authority to sponsor after-hours activities and to extend park hours, with the concurrence of the Police Chief, under certain conditions.[8]

Plaintiffs' decision to avoid discussing the Parks Director's permitting authority may relate to the explicit guidelines that are contained in the City Code. Specifically, City Code § 12.72.180, "Action on Application—Grounds for Denial—Procedure" establishes that the Parks Di-

rector "shall" grant a park use permit, unless the permit cannot be granted on the basis of any of several enumerated exceptions (e.g., failure to file a timely permit; the proposed activity would violate the law; etc.). (*See* Declaration of Brett M. Witter, ECF No. 12, Ex. A at 7–8). Furthermore, Section 12.72.180 explicitly provides that "[a]ny decision of the director may be appealed by the applicant to the city manager pursuant to Section 12.72.190." (*Id.* (citation omitted).)

The Court therefore concludes that the Park Director's discretionary authority to grant or deny permits to use City parks is expressly limited by § 12.72.180, which also provides for an appeal process and Plaintiffs have not shown any evidence that judicial review of the Parks Director's permitting decision is unavailable. These limitations are similar to the ones upheld in *Thomas* and the Court finds that they withstand Plaintiffs' facial challenge. *See Thomas*, 534 U.S. at 323, 122 S.Ct. 775 Further, to the extent that Plaintiffs are generally challenging the Parks Director's authority to extend park hours under § 12.72.090(B)(2) and § 12.72.090(C), the Court also finds that the Parks Director's discretionary authority is sufficiently cabined by the City Code to defeat Plaintiffs' facial challenge.[9]

8. § 12.72.090(B)(2) states that the park hours regulations shall not apply to "any person attending a meeting, entertainment event, recreation activity, dance or similar activity in such park provided such activity is sponsored or co-sponsored by the department of parks and community services or a permit therefor has been issued by the department of parks and community services." § 12.72.090(C) grants the Parks Director discretionary authority, with the concurrence of the Chief of Police, to extend park hours, subject to three conditions. Specifically, it permits the Director to extend park hours when the Parks Director determines that (1) such extension of hours is consistent with sound use of park resources, (2) the extension will enhance re-

creational activities in the city, and (3) the extension will not be detrimental to the public safety or welfare.

9. In addition, the Court notes that Plaintiffs apparently waited until the November 3, 2011, date of their hearing on their request for a TRO in this Court before they ever applied for a permit to use the Park. (See ECF No. 17 at 6.) While the Court notes that it was not necessary for Plaintiffs to have applied and been denied a permit before bringing their facial challenge, some evidence of effort by the Plaintiffs to comply with the City's permitting requirements would have given their arguments greater force. In addition, the Court notes that although Plaintiffs'

In sum, the Court finds that § 12.72.090 is a reasonable time, place and manner restriction on speech that: (1) is content-neutral; (2) is narrowly tailored to serve a substantial government interest; (3) leaves open ample alternatives to expression; and (4) includes adequate guidelines to appropriately limit the Park Director's discretionary authority.

### b. As Applied to Plaintiffs

In their FAC, Plaintiffs' argue their "as applied" challenge is based on their contention that defendants routinely sponsor and cosponsor after-hours events in Cesar Chavez Plaza but strictly enforce the park closure hours against plaintiffs. (FAC at ¶¶ 12, 16; Opp. at 8.) This contention, however, is a legal conclusion disguised as a factual allegation, is conclusory, and is unsupported by any factual allegations: it therefore violates the pleading requirements set forth by Rule 8(a) and the Supreme Court decisions of *Iqbal* and *Twombly*. *See, e.g., Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (Quoting Rule 8(a).) There is nothing, other than this conclusory statement, in the record to support Plaintiffs' "as applied" contention.

Furthermore, Plaintiffs' allegation does not even necessarily support the conclusion that the Parks Director is unconstitutionally applying § 12.72.090 to them. Even if it were true that the Parks Director was routinely sponsoring after hours events, absent facts stating otherwise, that would be within his authority under §§ 12.72.090(B)(2) and (C). The fact that the Director was also enforcing the park closure hours set forth in

§ 12.72.090 against Plaintiffs, a group that does not have a permit for after hours use of the Park, does not lead to the conclusion that the Parks Director is unconstitutionally applying the ordinance against one group. As alleged, one group had a right to be in the Park, while the other did not.

In sum, the Court concludes that § 12.72.090 is a facially valid time, place and manner restriction. The Court also concludes that Plaintiffs have failed to sufficiently state an "as-applied" challenge. The Court therefore grants Defendants' motion to dismiss the first three counts of Plaintiffs' FAC. Furthermore, the Court concludes that leave to amend would be futile. First, the statute is constitutional, so no amendment will assist Plaintiffs. Second, Plaintiffs have foregone the opportunity to seek leave to amend because the Court produced a detailed Order following the November 4, 2011, hearing explaining the substantive reasons the Court viewed Plaintiffs as having little chance of succeeding on the merits, and yet Plaintiffs never sought leave to amend.

Because Plaintiffs cannot succeed on their first three Counts, which raise the facial and as applied challenges to § 12.72.090, they also cannot succeed on Count Four, which contends that, because of the alleged constitutional violations, Defendants are liable for specified money damages under the "Bane Act," Cal. Civ. Code. § 52.1. (FAC at 8–9). Defendants' motion to dismiss that cause of action is therefore also granted without leave to amend, as amendment would be futile.

Finally, Defendants' motions to (1) dismiss John Shirley and Jim Combs; and (2) strike any reference to Plaintiffs' facial challenge to § 12.72.090 (as an alternative argument in the event that the Court did

permit request was apparently ultimately denied on November 7, 2011, neither party dis-

*cusses this issue in the context of the Motion to Dismiss.*

not dismiss the first three counts) are now both moot.

## CONCLUSION

As a matter of law, and for the reasons set forth above, the City's Motion to Dismiss (ECF No. 23) is GRANTED without leave to amend. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.