[Cite as *Cleveland v. McCardle*, 2012-Ohio-5749.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 98230 and 98231**

## CITY OF CLEVELAND

PLAINTIFF-APPELLEE

vs.

## ERIN MCCARDLE AND LEATRICE TOLLS

DEFENDANTS-APPELLANTS

## JUDGMENT:
## REVERSED AND REMANDED

Civil Appeal from the
Cleveland Municipal Court
Case Nos. 2011-CRB-037719 and 2011-CRB-037724

**BEFORE:**     Blackmon, A.J., Celebrezze, J., and Sweeney, J.

**RELEASED AND JOURNALIZED:** December 6, 2012

**ATTORNEYS FOR APPELLANTS**

J. Michael Murray
Steven D. Shafron
Berkman, Gordon, Murray & DeVan
55 Public Square, Suite 2200
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Barbara A. Langhenry
Interim Director of Law

Victor R. Perez
Chief City Prosecutor
Connor P. Nathanson
Christina Haselberger
Assistant City Prosecutors
City of Cleveland
Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, A.J.:

{¶1} For purposes of this opinion, the appeals of both appellants Erin McCardle and Leatrice Tolls have been consolidated.[1]

{¶2} Appellants Erin McCardle and Leatrice Tolls appeal their convictions for violating Cleveland Codified Ordinances 559.541 ("CCO 559.541"), which prohibits remaining, without a permit, between the hours of 10:00 p.m. and 5:00 a.m., on an area of downtown Cleveland, Ohio known as Public Square, specifically, the Tom L. Johnson quadrant.[2] They assign the following error for our review:

**I. Cleveland Cod. Ord. 559.541 is unconstitutional under the First and Fourteenth Amendments to the United States Constitution.**

{¶3} Having reviewed the record and pertinent law, we reverse and remand the trial court's decision. The apposite facts follow.

---

[1]*See* journal entries dated November 6, 2012.

[2]Tom L. Johnson was the 35th Mayor of the city of Cleveland. His full name was Thomas Loftin Johnson. In his book, *My Story: the Autobiography of Tom L. Johnson* [Clevelandmemory.org/ebooks/johnson(accessed Dec. 4, 2012)], he explains why tents are useful for campaigning as opposed to public halls. He said "tent meetings have many advantages over the hall meetings. Tent meetings can be held in all parts of the city - in short the meetings are literally taken to the people." In the final section of that chapter, he writes about a man trying to speak at one of the meetings and someone shouted "come on, come on! Speak where you are." P. 82-84. We take judicial notice that this park is dedicated to him, and his statue is erected there as a testament to free speech.

## Background

{¶4}  On September 17, 2011, approximately a thousand demonstrators assembled in Zuccotti Park, near Wall Street in New York City, to protest against the claimed increasing income disparity between the highest income earners, now known as the "one percent" and everyone else, now known as the "99 percent."   The protesters erected tents and remained in Zuccotti Park around the clock and the movement called "Occupy Wall Street" began.   In the days and weeks that followed, this movement spread to other cities, including Cleveland, Ohio.

## Occupy Cleveland

{¶5} In Cleveland, members of the Occupy Movement began a symbolic occupation of Public Square, in an area consisting of three out of a four quadrant park.   The city of Cleveland ("City") granted the members of the Occupy Cleveland movement a permit to remain in the southwest quadrant past 10 p.m.

## Facts

{¶6}  It is uncontraverted that both appellants were arrested in the Tom L. Johnson quadrant and charged with violating the City's permission to use ordinance.   Both appellants respectively moved to dismiss their cases on First Amendment grounds.   The McCardle judge ruled in a written opinion

that the City ordinance that McCardle violated was constitutional. McCardle then pled no contest to violating the permission ordinance, otherwise known as the prohibited hours law, and her execution of judgment was stayed pending appeal.

{¶7} Subsequently, the judge in the Tolls case adopted the McCardle judge's opinion, and Tolls likewise pled no contest and her execution of judgment was stayed pending appeal.

{¶8} On August 16, 2007, CCO 559.541, Prohibited Hours on Public Square, went into effect. It reads as follows:

> No unauthorized person shall remain on or in any portion of the area known as the Public Square area between the hours of 10:00 p.m. to 5:00 a.m. Persons may be authorized to remain in Public Square by obtaining a permit from the Director of Parks, Recreation and Properties.
>
> Such permits shall be issued when the Director finds:
>
> (a) That the proposed activity and use will not unreasonably interfere with or detract from the promotion of public health, welfare and safety;
>
> (b) That the proposed activity or use is not reasonably anticipated to incite violence, crime or disorderly conduct;
> (c) That the proposed activity will not entail unusual, extraordinary or burdensome expense or police operation by the City;
>
> (d) That the facilities desired have not been reserved for other use at the day and hour required in the application.
>
> **For purposes of this section, the "Public Square area" includes the quadrants and all structures (including but**

**not limited to walls, fountains, and flower planters) located within the quadrants known as Public Square and shown on the map below, but excludes the quadrant on which sits the Soldiers and Sailors Monument; the Public Square area also excludes all dedicated streets, public sidewalks adjacent to dedicated streets and RTA bus shelters within this area.**

{¶9} The City offered no evidence as to why the Soldiers and Sailors Monument was exempted from the prohibited use ordinance. Whoever violates the ordinance is guilty of a minor misdemeanor for a first-time offender. We conclude that the City ordinance is an unconstitutional violation of the First Amendment rights to free speech and assembly.

## The Activity and the Place

{¶10} The appellants were engaged in a peaceful protest on grounds that have historically been viewed as a public place. However, between 10:00 p.m. and 5:00 a.m., this area becomes less public for those who are unauthorized to be in the park. An unauthorized person is anyone who fails to obtain a permit to be in the park physically. It forbids a person from being on the park grounds; but allows for "permitted activity" or "proposed use" once sanctioned by the director of parks.

{¶11} The ordinance has a curfew for individuals and requires a permit for activity or use by an individual. Consequently, it does not exempt a person or group who intends to erect a tent for a meeting or speech nor does it

narrow its focus to those who seek to be in the area to demonstrate or protest for an hour or all night.[3]

{¶12} We conclude that the activity of the Occupy Cleveland group, including the appellants, was speech-related activity and is protected under the First Amendment. The police identified the appellants' activities in the police report, (Exhibit A), as protesting the economic inequities between Wall Street and the rest of America. Thus, their activity advanced a public purpose and spoke to a public issue. *See Snyder v. Phelps*, ____ U.S. ____, 131 S.Ct. 1207, 179 L.Ed. 2d 172 (2011). They were not a private group using the park for a private purpose such as camping for recreation. The place was public with unlimited access until 2007 when the City restricted use between the hours of 10:00 p.m. to 5:00 a.m.

{¶13} In *Capital Square & Review Advisory Bd. v. Pinette,* 515 U.S. 753, 757-770, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995), the Supreme Court citing *Hague v. Commt. for Indus. Organization*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), held there is a constitutional right to use "streets and parks for communication of views." This right to use is based on the fact that "streets and parks * * * have immemorially been held in trust for the

---

[3] We take judicial notice that had this law been in effect when Tom L. Johnson was running for public office, he would have been arrested for erecting a tent regardless of his purpose.

public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing questions." *Hague* at 515. Thus, the Ku Klux Klan could erect a cross on Capital Square in Columbus, Ohio, with impunity and without having to seek permission.

{¶14} Therefore, the appellants' peaceful activity and the public nature of the area makes for a perfect blend of the notion that ideas should be advanced and vetted in the open marketplace, protected by the tenant of the First Amendment to the United States Constitution.

## Permission to Speak In Public

{¶15} The First Amendment provides in part that "Congress shall make no law * * * abidging the freedom of speech * * *." First Amendment to the U.S. Constitution. As we discussed earlier, the appellants were engaged in peaceful speech-related activity at the Tom L. Johnson public park. The appellants should not have been required to obtain permission to use the park.

{¶16} In *Perry Edn. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed. 2d 794 (1983), the following pronouncement was made:

> **In these quintessential public forums, the government may not prohibit all communicative activity. For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state**

**interest and that it is narrowly drawn to achieve that end. The State may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.**

{¶17} CCO 559.541 was not aimed at the Occupy Movement. It was enacted in 2007, well before the movement. It is unclear from the record the interest the City was concerned with and why this ordinance was enacted at that time.

{¶18} The City has argued that the ordinance is a time, place, and manner restriction, content-neutral, and thus constitutional. We conclude that even a time, place, and manner restriction may be deemed unconstitutional when it over burdens speech, which is the case here.

{¶19} Initially, the City argued that the appellants were engaged in non-speech or at best low-valued speech and this court should review the City's law under a rational basis standard. It is undisputed that appellants were protesting or demonstrating the claimed economic inequality in America under the tent of a group named Occupy Wall Street. They were expressing their beliefs and planned to erect tents in the park as further protest to bring attention to their concerns.

{¶20} Consequently, *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984), is not helpful and

inapplicable. The ordinance in that case specifically banned sleeping in public parks; the interest was to keep the national parks aesthetically placed in and near the Capital. The non-violent picketers had a permit to engage in the use of the park for expressive activity, but did not have a permit to sleep in the park. Under the ordinance in *Clark*, the regulation specifically forbade sleeping in the nation's parks. CCO 559.541 does not forbid sleeping; it forbids absolute presence in the park between 10:00 p.m. and 5:00 a.m., regardless of the user's message or purpose.

{¶21} It is uncontroverted that this regulation does not specifically reference any speech activity. The City's prohibited use law does not ban picketing or demonstrating specifically. As a result, it is on its face content-neutral. The City has not adopted this regulation of speech because it disagrees with the message being conveyed. *Ward v. Rock Against Racism*, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). However, an ordinance may be a content-neutral time, place, and manner regulation and nonetheless be unconstitutional. The issue for us is whether it serves a substantial significant interest; is narrowly tailored; and offers alternative channels of communication. As to each issue, the City has failed to meet the *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), test.

{¶22} We must point out that the appellants did not seek a permit for this quadrant; consequently, we are not concerned with whether the City's permit requirement was administered in a content-neutral manner. Also, the evidence is void in the record of how the City advanced its permit requirement. Our concern is the prior restraint aspect as it is viewed under the *O'Brien* test. Thus, we turn to whether the City's law restricting use of a park, although content-neutral, is nonetheless invalid under *O'Brien*. The City must establish that it has a significant, substantial interest in having this law. The City has relied solely on the right to pass laws that protect the health and safety of its citizens. However, when the freedom of speech is at issue, the City has a significant burden, which it has not sustained. During oral argument, the City argued that the ordinance was needed so that Cleveland could clean the area. Also, it argued that it was a sanitation concern because the protesters were planning to sleep at the park. The ordinance uses the same health, welfare, and safety language and adds expense and burden to City's services and conflicts with other users. Aesthetics and convenience are not significant interests in this case when the ban prohibits all speech.

{¶23} In *Snyder*, 131 S.Ct. 1207, the court rejected a welfare interest when the religious group was accused of causing mental anguish to the family

of a deceased serviceman while picketing during the funeral service. The Supreme Court held when the speaker is in a public place with a public message of a public concern, the expressive activity may not be burdened unless it serves a compelling interest. We are not suggesting that the Supreme Court has altered the *O'Brien* test, but if the interest in *Snyder* did not suffice, certainly sanitation, convenience, and aesthetics will not suffice under *O'Brien* in this case.

{¶24} We reiterate that the City failed to present any testimony regarding a specific interest that concerned the City. It is conceivable that the City was concerned more with private issues, such as homeless individuals using the park for the private purpose of sleeping. Here, the appellants were engaged in the very activity noted by the Supreme Court in *Snyder*: engaged in speech-related activity in a public place concerning a public issue.

{¶25} The City did not seek to make exceptions for those individuals seeking to use the park for a speech-related activity. The way the ordinance is written, it seems to be concerned with those who seek to use the park for private reasons. Consequently, it is not narrowly tailored. The City argues that it allows for the users to seek a permit and that is sufficient to meet the *O'Brien* test. We disagree.

"A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby v. Schultz*, 487 U.S. 470-485 (quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 807, (1984). The narrow-tailoring requirement is satisfied when the governmental regulation "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 799. However, this standard "does not mean that a time, place, or manner regulation may burden substantially more speech than is necessary to further the government's legitimate interests. Government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Id.* Yet, this "narrowly tailored" analysis does not require a court to decide whether there are alternative methods of regulation that would achieve the desired end, but would be less restrictive of plaintiffs' First Amendment rights. *Id.* at 797.

{¶26} The City's ordinance impacts the appellants' right to speak and engage in speech-related activity. The City's purported interest is convenience and sanitation. It is no question that the appellants are banned from expressive activity. The City contends that the permit requirement is sufficiently narrowing. We disagree. The permit's requirement serves as an unreasonable ban and has the purpose of eliminating peaceful speech. In *Frisby,* 487 U.S. 470 and *Snyder*, 131 U.S. 1207, the Supreme Court held that the concern was whether the laws' impact on speech failed to achieve the legitimate goals of the City, and instead of meeting these goals, the law

substantially banned more speech than was necessary. Here, the ban absolutely forbids access regardless of the purpose.

{¶27} When balancing the City's need to clean the park with the right of appellants to engage in a communicative activity, the latter should always prevail. Consequently, we believe the City's law targets and eliminates more than the evil it seeks to remedy, which it claims is convenience and sanitation.

{¶28} Because the City's law is not narrowly tailored, it is unnecessary to discuss whether there were alternative channels of communication. At one point in the record, it was suggested that the police told appellants to move to another area. Also, we note that the appellants could have used the Soldiers and Sailors quadrant; it was also suggested that they could have protested at other hours without penalty. As we have pointed out on several occasions in this opinion, the City's regulation burdens the rights of appellants to use a public place for public discourse on a public matter. The City must have a significant, substantial interest. Convenience is an insufficient interest, and permit laws are by their nature prior restraints of which a time, place, and manner regulation will not suffice when the regulation bars more speech than is necessary. Accordingly, under *O'Brien*, the City's prohibited hours law is unconstitutional.

{¶29} Finally, appellants argue the City's unauthorized persons law is unconstitutionally overbroad and facially invalid. The sum of the appellants' argument is that this law in all of its application directly restricts protected First Amendment activity. The City argues that the ordinance is designed to protect the City's legitimate governmental interests, which are health, safety, and welfare.

{¶30} It is well established that a law may be facially void for over breadth reasons. This occurs even when the appellants are the parties at interest and the City is acting to regulate matters in its interest: health, safety, and welfare. However, when the ordinance sweeps broadly and burdens the freedom to engage in communicative activity, any interest it seeks to protect may be overshadowed by its ban on speech. Here, the ordinance fails to take into consideration persons who are seeking to use the park for peaceful protest with a public message of interest to those who might want to see, hear, or know about the protest. Consequently, we agree with the appellants that this law on its face is void. But as such, we believe it can be narrowed by exempting those who seek to use the park for expressive activity when the message is of a public concern and there exists individuals who want to know about the message.

**{¶31}** In conclusion, we hold that the City's regulation is content-neutral, but unconstitutional because the appellants' speech-related activity occurred in a public forum and thus, the regulation is not narrowly tailored in ways that the government has showed is necessary to serve a significant, substantial interest. Thus, we conclude that we need not address the alternative channels prong of *O'Brien*. Besides, we conclude it is not enough to validate the City's law.

**{¶32}** Judgment reversed and remanded for further proceedings consistent with this opinion.

It is, therefore, considered that said appellants recover of said appellee their costs herein taxed.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, ADMINISTRATIVE   JUDGE

FRANK D. CELEBREZZE, J., and
JAMES J. SWEENEY, J., CONCUR