[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland v. McCardle,* Slip Opinion No. 2014-Ohio-2140.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-2140

THE CITY OF CLEVELAND, APPELLANT, *v.* MCCARDLE ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland v. McCardle,* Slip Opinion No. 2014-Ohio-2140.]

*Constitutional law—Curfews—Freedom of speech—An ordinance establishing a curfew in a public park is constitutional under the First and Fourteenth Amendments to the United States Constitution if it is content neutral, is narrowly tailored to advance a significant government interest, and allows alternative channels of speech.*

(No. 2013-0096—Submitted November 19, 2013—Decided May 28, 2014.)

APPEAL from the Court of Appeals for Cuyahoga County, Nos. 98230 and 98231, 2012-Ohio-5749.

_____

SYLLABUS OF THE COURT

An ordinance establishing a curfew in a public park is constitutional under the First and Fourteenth Amendments to the United States Constitution if it is content neutral, is narrowly tailored to advance a significant government interest, and allows alternative channels of speech.

_____

LANZINGER, J.

{¶ 1} We accepted a discretionary appeal brought by the city of Cleveland seeking to uphold Cleveland Codified Ordinance 559.541 as constitutional. The ordinance, which prevents any person from remaining in the Public Square area of downtown Cleveland between 10:00 p.m. and 5:00 a.m. without a permit issued by the Cleveland Department of Parks, Recreation, and Properties, was challenged as an unconstitutional infringement of freedom of speech by protesters involved in the Occupy Cleveland movement.

{¶ 2} We hold that an ordinance establishing a curfew in a public park is constitutional under the First and Fourteenth Amendments to the United States Constitution if it is content neutral, is narrowly tailored to advance a significant government interest, and allows alternative channels of speech.

## I. Case Background

{¶ 3} This case arose as an outgrowth of the Occupy Wall Street Movement in New York City in which hundreds demonstrated in Zuccotti Park from September to November 2011 to protest income disparity. The movement spread to other cities around the United States, including Cleveland.

{¶ 4} Around 10:00 p.m. on October 21, 2011, a group known as Occupy Cleveland engaged in a demonstration in the Public Square area of Cleveland. Police officers notified the group that they needed to leave the area because of the city's curfew. Several people, including appellees, Erin McCardle and Leatrice Tolls ("the protestors"), remained. McCardle was arrested and charged with criminal trespass, resisting arrest, and a curfew violation, under Cleveland Codified Ordinances 623.04, 615.08, and 559.541. Tolls was also arrested and charged with criminal trespass and a curfew violation. Each defendant moved to dismiss the charges, contending that the city's ordinance establishing a curfew in the Public Square was unconstitutional under the First and Fourteenth Amendments to the United States Constitution. After a hearing,

the Cleveland Municipal Court denied each defendant's motion to dismiss. Both women then pled no contest to the curfew violation, and the remaining charges were dismissed.

{¶ 5} McCardle and Tolls filed separate notices of appeal, and the Eighth District Court of Appeals consolidated the cases for disposition.

{¶ 6} The court of appeals reversed the municipal court's judgment and remanded the cases, holding that the Cleveland ordinance violated the protestors' First Amendment rights to free speech and assembly. The court held that although the ordinance was content neutral, Cleveland's interests were insufficient to justify its limit on speech and the ordinance was not narrowly tailored. It concluded that the ordinance was void on its face.

{¶ 7} We accepted Cleveland's appeal on the following proposition of law:

> It is constitutionally permissible for a municipality to enforce a content-neutral time, place and manner restriction such as Cleveland Codified Ordinance 559.541, where the ordinance is narrowly-tailored to advance a significant government interest that leaves open alternative channels of communication.

134 Ohio St.3d 1507, 2013-Ohio-1123, 984 N.E.2d 1101. We agree with the city and therefore reverse the judgment of the Eighth District Court of Appeals.

## II. Legal Analysis

*The Ordinance*

{¶ 8} The ordinance, "Prohibited Hours in Public Square," Cleveland Codified Ordinance 559.541, became effective on August 16, 2007, and states:

No unauthorized person shall remain on or in any portion of the area known as the Public Square area between the hours of 10:00 p.m. to 5:00 a.m. Persons may be authorized to remain in Public Square by obtaining a permit from the Director of Parks, Recreation and Properties.

Such permits shall be issued when the Director finds:

(a) That the proposed activity and use will not unreasonably interfere with or detract from the promotion of public health, welfare and safety;

(b) That the proposed activity or use is not reasonably anticipated to incite violence, crime or disorderly conduct;

(c) That the proposed activity will not entail unusual, extraordinary or burdensome expense or police operation by the City;

(d) That the facilities desired have not been reserved for other use at the day and hour required in the application.

For purposes of this section, the "Public Square area" includes the quadrants and all structures (including but not limited to walls, fountains, and flower planters) located within the quadrants known as Public Square and shown on the map below, but excludes the quadrant on which sits the Soldiers and Sailors Monument; the Public Square area also excludes all dedicated streets, public sidewalks adjacent to dedicated streets and RTA bus shelters within this area.

Whoever violates this section is guilty of a minor misdemeanor on the first offense * * *.

**{¶ 9}** Thus, the ordinance establishes a curfew for the Public Square and authorizes a permit process through the city's Director of Parks, Recreation, and Properties.

*Level of Scrutiny*

**{¶ 10}** The First Amendment to the United States Constitution prohibits Congress from "abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."[1] City ordinances are brought within the scope of this prohibition by the Fourteenth Amendment. *E.g., Members of the City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 792, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984), fn. 2. A government entity cannot exclude speakers from a public forum without a compelling state interest. *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.,* 473 U.S. 788, 800, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). But, "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired"; therefore, even expression "protected by the First Amendment [is] subject to reasonable time, place, and manner restrictions." *Heffron v. Internatl. Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981).

**{¶ 11}** A major criterion for a valid time, place, and manner restriction on activities protected by the First Amendment is that the restriction may not be based upon the content, or subject matter, of the speech. If a regulation limits speech based upon what is being said, the regulation is subject to strict scrutiny. That is, it will be upheld only if it is narrowly tailored to serve a compelling government interest. *Pleasant Grove City, Utah v. Summum,* 555 U.S. 460, 469,

---

[1] Within Article I, Section 11 of the Ohio Constitution is the phrase "no law shall be passed to restrain or abridge the liberty of speech," a similar provision that will not be considered because the state constitution was not relied upon.

129 S.Ct. 1125, 172 L.Ed.2d 853 (2009). But if a regulation is content neutral, meaning it does not regulate speech based on what is being said, the regulation is subject to the lesser standard of intermediate scrutiny. *Turner Broadcasting Sys., Inc. v. Fed. Communications Comm.*, 512 U.S. 622, 661-662, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994).

**{¶ 12}** When evaluating whether an ordinance that regulates speech is content neutral, "[t]he government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Cleveland's ordinance prohibits persons from remaining in the Public Square between 10:00 p.m. and 5:00 a.m. without a permit. This prohibition applies to all persons regardless of their message or their activities. It does not ban a specific message or a specific form of expression. As a result, it is content neutral.

**{¶ 13}** However, a content-neutral regulation may still be unconstitutional if it does not survive intermediate scrutiny. *Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). The intermediate-scrutiny test has three requirements: the regulation must be narrowly tailored, it must serve a significant government interest, and it must leave open ample alternative avenues of communication. *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

**{¶ 14}** We will now examine the ordinance in light of each of these requirements.

*Significant Government Interest*

**{¶ 15}** In its merit brief and at oral argument, the city stated that public safety, conservation of public property, and preservation of public resources are issues of paramount concern. In analyzing the significance of the city's interest,

the Eighth District noted that Cleveland failed to "present any testimony regarding a specific interest" furthered by the ordinance. 2012-Ohio-5749, 989 N.E.2d 73, ¶ 24. The protestors argue that the city failed to present evidence in support of their alleged significant government interests and that the city's stated interests are not actually furthered by the ordinance. But Cleveland's regulatory aims are presented on the face of the ordinance. Specifically, the ordinance authorizes the issuance of a permit unless doing so would (1) unreasonably threaten public health, welfare, or safety, (2) be unreasonably likely to incite violence or other unlawful activity, (3) impose excessive financial or operational costs on the city, or (4) interfere with another reservation of the same facility. Cleveland Codified Ordinances 559.541. These stated exceptions to the curfew explain the original reason for the curfew—to safeguard public health, to protect against violence and criminal activity, to conserve city resources, and to preserve property. Furthermore, the First Amendment does not require the government to demonstrate the significance of its interest by presenting detailed evidence; it " ' "is entitled to advance its interests by arguments based on appeals to common sense and logic." ' " *Coalition for the Abolition of Marijuana Prohibition v. Atlanta,* 219 F.3d 1301, 1318 (11th Cir.2000), quoting *Internatl. Caucus of Labor Comm. v. Montgomery*, 111 F.3d 1548, 1551 (11th Cir.1997), quoting *Multimedia Publishing Co. of South Carolina v. Greenville-Spartanburg Airport*, 991 F.2d 154, 160 (4th Cir.1993). Speech restrictions may be justified "by reference to studies and anecdotes pertaining to different locales altogether * * * or even, in a case applying strict scrutiny, to justify restrictions based solely on history, consensus, and 'simple common sense.' " *Florida Bar v. Went for It,* 515 U.S. 618, 628, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995), quoting *Burson v. Freeman*, 504 U.S. 191, 211, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992).

**{¶ 16}** Ordinances that relate to the interest of ensuring the safety of people using public forums have been consistently upheld. *Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 781-782, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) (White, J., dissenting); *see Hill v. Colorado,* 530 U.S. 703, 715, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000) (a traditional exercise of the state's police powers is to protect the health and safety of its citizens). The curfew and permit requirements in Cleveland Codified Ordinance 559.541 address these issues. The ordinance itself protects the safety of those wishing to use the square after hours and protects the city's investment in that property.

**{¶ 17}** The ordinance also protects the city's investment in the Public Square. Property preservation and aesthetic concerns have been held to be significant concerns when they concern urban spaces and public parks. *Taxpayers for Vincent,* 466 U.S. at 816-817, 104 S.Ct. 2118, 80 L.Ed.2d 772. A city's interest in preserving the quality of urban life is one that must be given high respect. *Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 50, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).

**{¶ 18}** Because the government interests that the city seeks to promote and protect through the ordinance have been consistently upheld as satisfying intermediate scrutiny, we hold that the significance of these interests is well settled and justifies the time, place, and manner restriction here. We now turn to an analysis of the requirement that the ordinance be narrowly tailored.

*Narrowly Tailored*

**{¶ 19}** The Eighth District held that the ordinance was not sufficiently narrow and that the "permit's requirement serves as an unreasonable ban and has the purpose of eliminating peaceful speech." 2012-Ohio-5749, 989 N.E.2d 73, ¶ 26. The protestors argue that the city's interests were not furthered by the ordinance, let alone furthered in a narrowly tailored way.

8

{¶ 20} The city contends that the ordinance is not a complete ban on speech. Instead, the ordinance simply prohibits any person from remaining in the Public Square between 10:00 p.m. and 5:00 a.m., while allowing unfettered and unrestricted access at all other times of day. Those seeking to remain in the square during the hours limited by the ordinance, regardless of whether they wish to engage in speech or any other type of activity, may do so by obtaining a permit. Cleveland Codified Ordinances 559.541.

{¶ 21} A regulation of the time, place, or manner of speech or expression must be narrowly tailored to serve the government's legitimate content-neutral interests, but it need not be the least restrictive or least intrusive means of doing so. *Ward,* 491 U.S. at 798, 109 S.Ct. 2746, 105 L.Ed.2d 661. The requirement to narrowly tailor the regulation of speech is satisfied "so long as the neutral regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *United States v. Albertini,* 472 U.S. 675, 689, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985); *see also Community for Creative Non-Violence,* 468 U.S. at 297, 104 S.Ct. 3065, 82 L.Ed.2d 221 (a reasonable regulation of the manner of expression responds precisely to the substantive problems that legitimately concern the government). We disagree with the Eighth District's conclusion that Cleveland's ordinance is not narrowly tailored. The city's interests in safeguarding public health, protecting against violence and criminal activity, and preserving the Public Square would be achieved less effectively without the enactment and enforcement of Cleveland Codified Ordinance 559.541. The ordinance does not ban public expression within the square 24 hours a day. The limitation is on any activity during the late night and early morning hours, unless granted a permit. Cleveland Codified Ordinance 559.541 is narrowly tailored to serve its significant government interests.

*Alternative avenues of communication*

{¶ 22} The Eighth District did not address whether the ordinance leaves open alternative avenues of communication, because it struck down the ordinance before reaching this issue. 2012-Ohio-5749, 989 N.E. 2d 73, ¶ 31. But a challenged restriction on speech or expression need leave open only a "reasonable opportunity" for the speaker to communicate his or her message. *Renton*, 475 U.S. at 54, 106 S.Ct. 925, 89 L.Ed.2d 29; *Menotti v. Seattle,* 409 F.3d 1113, 1138 (9th Cir.2005), quoting *Colacurcio v. Kent*, 164 F.3d 545, 555 (9th Cir.1998) (" 'the Supreme Court generally will not strike down a governmental action for failure to leave open ample alternative channels of communication unless the government enactment will foreclose an entire medium of public expression across the landscape of particular community or setting' ").

{¶ 23} The ordinance leaves open a reasonable opportunity for speech because it expressly excludes "all dedicated streets, public sidewalks adjacent to dedicated streets and RTA bus shelters within this area." Cleveland Codified Ordinances 550.541. Consequently, the protestors could have simply moved off the grass and onto the public sidewalk surrounding the Public Square. They had unrestricted access to the sidewalks adjacent to Public Square and had 17 hours in which they could have been in the square without a permit. The ordinance permits alternative channels of communication and thus satisfies this portion of the intermediate-scrutiny test.

### III. Conclusion

{¶ 24} Because Cleveland Codified Ordinance 559.541 passed the intermediate-scrutiny analysis set forth by the United States Supreme Court, that is, the ordinance is content-neutral, narrowly tailored to advance a significant government interest, and allows alternative channels of speech, we hold that it is constitutional under the First and Fourteenth Amendments to the United States Constitution.

{¶ 25} The judgment of the court of appeals is reversed.

Judgment reversed.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

PFEIFER, J., dissents.

————————————

**PFEIFER, J., dissenting.**

{¶ 26} After all these years, I remain confused when litigants assert a federal constitutional right in our state court system without also asserting similar rights under our state constitution. As we stated in *Arnold v. Cleveland*, 67 Ohio St.3d 35, 616 N.E.2d 163 (1993), paragraph one of the syllabus:

> The Ohio Constitution is a document of independent force. In the areas of individual rights and civil liberties, the United States Constitution, where applicable to the states, provides a floor below which state court decisions may not fall. As long as state courts provide at least as much protection as the United States Supreme Court has provided in its interpretation of the federal Bill of Rights, state courts are unrestricted in according greater civil liberties and protections to individuals and groups.

We will never know whether the outcome of the case would have been different had McCardle asserted protection under Article I, Section 11 of the Ohio Constitution.

{¶ 27} Of course, the point should be moot. It is quite clear that Cleveland Codified Ordinance 559.541 is unconstitutional under the federal constitution because it is not narrowly tailored to further a significant government

interest.  One obvious example is enough to put the lie to the majority's conclusion to the contrary.

{¶ 28} McCardle was arrested and charged with violating the ordinance because she remained in Public Square without a permit between the hours of 10:00 p.m. and 5:00 a.m.  The city asserts, and a majority of this court believes, that the ordinance is necessary to "safeguard public health, to protect against violence and criminal activity, to conserve city resources, and to preserve property."  Majority opinion at ¶ 15.  And yet the ordinance would not prohibit 1,000 Ohioans, or foreigners for that matter, from marching from one side of the public square to the other, over and over, all night, as long as they do not remain in Public Square.  How can an ordinance that prohibits one person from remaining in Public Square be considered narrowly tailored to serve a significant government interest when the same ordinance allows 1,000 people or 100 people or one person to walk back and forth through the park all night?  It defies logic.

{¶ 29} Public Square has long been the quintessential public forum. Limiting access to it under Cleveland Codified Ordinance 559.541 restricts freedom of speech.  How ironic that ground zero of the predatory-lending crisis in Ohio should be considered off limits to the Occupy Cleveland movement, which was protesting, among other things, the financial meltdown that was precipitated in part by predatory lending.

{¶ 30} Cleveland Codified Ordinance 559.541 is not narrowly tailored to further a significant government interest.  I dissent.

_____

Barbara Langhenry, City of Cleveland Director of Law, Victor Perez, Chief Prosecutor, and Connor P. Nathanson, Assistant City Prosecutor, for appellant.

Berkman, Gordon, Murray & DeVan, J. Michael Murry, and Steven D. Shafron, for appellees.

12

Michael DeWine, Attorney General, Eric E. Murphy, Solicitor General, Michael J. Hendershot, Chief Deputy Solicitor, and Samuel C. Peterson, Deputy Solicitor, urging reversal for amicus curiae State of Ohio.

Ice Miller, L.L.P., Philip Hartmann, Rebecca K. Schaltenbrand, and Stephen J. Smith; and Ohio Municipal League, John Gotherman, urging reversal for amicus curiae Ohio Municipal League.

_____