**STATE of Iowa, Appellee,**

v.

**Edward Joseph LACEY and Robert D. Novak, Appellants.**

No. 89–1772.

Supreme Court of Iowa.

Jan. 23, 1991.

Rehearing Denied Feb. 20, 1991.

**538**

Joseph E. Day and Mark H. Rettig, of Hines, Pence, Day & Powers, Cedar Rapids, for appellants.

Thomas J. Miller, Atty. Gen., Thomas S. Tauber, Asst. Atty. Gen., Denver D. Dillard, County Atty., and Laurie Craig, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, CARTER and ANDREASEN, JJ.

CARTER, Justice.

Defendants, Edward Joseph Lacey and Robert D. Novak, appeal from convictions of criminal trespass as defined in Iowa Code section 716.8(1) (1989). Defendants were charged after refusing to leave the property of Ryan's Family Steakhouse in Cedar Rapids, Iowa, after being requested to do so by the owner's employees. Their activities on the premises consisted of distributing handbills which urged potential customers to boycott the restaurant because its owners were employing nonunion building contractors at another location.

Defendants were found guilty of these simple misdemeanor violations by a district associate judge. They appealed their convictions to a district judge under Iowa Rule of Criminal Procedure 54. That appeal resulted in an affirmance of the convictions. We granted discretionary review from the judgment of the district court.

Defendants contend that the activity upon which the criminal charges were based was protected as a reasonable exercise of free speech under the first amendment to the federal constitution and article I, section 7 of the Iowa Constitution. They further urge that the activity is protected under the National Labor Relations Act (NLRA), 29 U.S.C. section 158(b)(4). The State asserts that neither the first amendment nor article I, section 7 of the Iowa Constitution provides a defense to the charge of criminal trespass on private property. It also asserts that the NLRA does not protect the type of handbilling on private property which was carried on by these defendants.

*I. Protected Activity Under the NLRA.*

In support of their claim of protection under the NLRA, defendants rely on the decision in *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988). The Court held in that case that the NLRA protects nonpicketing communications directed at customers of a distributor of goods produced by an employer with whom

the union has a labor dispute. *Id.* at 574, 108 S.Ct. at 1396, 99 L.Ed.2d at 654. Defendants argue that, by analogy, their handbilling activities at Ryan's should also be protected under the NLRA. *DeBartolo* does not, however, directly answer the question presented here, *i.e.*, whether this activity, if protected under the NLRA, may take place on private property. The gravamen of the criminal trespass offense of which defendants were convicted is not handbilling. It is remaining on private property after being requested to leave by the owner.

In *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), the Court observed that in considering the validity of union activities on private property "[a] trespass is far more likely to be unprotected than protected." *Id.* at 205, 98 S.Ct. at 1761, 56 L.Ed.2d at 230.

In *Emery Realty, Inc. v. NLRB,* 863 F.2d 1259, 1264 (6th Cir.1988), the court affirmed a Board decision finding that it was an unfair labor practice for a property owner to refuse to allow union handbilling. In that case, however, "core" rights of organizing nonunion employees were involved.[1] In addition, it appeared that the activities occurred in an arcade which was used as a public thoroughfare and in which other groups were permitted to solicit passersby. *Id.*

In *Laborer's Local Union No. 204 v. NLRB,* 904 F.2d 715 (D.C.Cir.1990), the court reviewed an NLRB decision in a case involving facts similar to the present case. There, union members handbilled a Hardee's store because construction workers remodeling another Hardee's store were being paid substandard wages. The union members had positioned themselves in the public parking lot adjacent to the store. At the insistence of Hardee's, they were arrested for trespass but never prosecuted. *Id.* at 716.

The court in *Laborer's Local* affirmed the Board's decision that Hardee's had not committed an unfair labor practice by causing the arrest of the union handbillers. *Id.* at 719. The Board had based its decision on the so-called "pathmarking opinion" in *Jean Country,* 291 N.L.R.B. No. 4 (Sept. 27, 1988). The *Jean Country* analysis requires a comparative evaluation with a view to accommodation of the opposing interests. This requires consideration of alternative means by which the union may assert its interests. The court of appeals approved this test. *Laborer's Local,* 904 F.2d at 718.

In upholding the Board's decision, the court in *Laborer's Local* noted that the union activities involved were "noncore" rights which merit less protection than "core" activities. The Hardee's store was found to have had only an attenuated connection to union activity. *Id.* Consequently, the court concluded that the Board acted properly in deferring to the owner's property rights. *Id.* at 719.

Our review of these federal decisions convinces us that defendants in the present case have failed to establish that their activities at Ryan's were insulated from criminal prosecution by the NLRA.

## II. *Free Speech Rights.*

■ Defendants urge that their convictions violate free speech protection under both the federal and state constitutions. The first amendment protects speech from being abridged by the government. *Frisby v. Schultz,* 487 U.S. 474, 479, 108 S.Ct. 2495, 2499, 101 L.Ed.2d 420, 428 (1988); U.S. Const. amend. I; *see also* Iowa Const. art. I, § 7. Careful scrutiny of an abridgment of speech first focuses on the place of the speech. *Frisby,* 487 U.S. at 479, 108 S.Ct. at 2499, 101 L.Ed.2d at 428. The Constitution does not protect against a private party who seeks to abridge free expression of others on private property. *Hudgens v. NLRB,* 424 U.S. 507, 513, 96 S.Ct. 1029, 1033, 47 L.Ed.2d 196, 203 (1976);

---

1. "Core" § 7 rights include the right to organize employees and the right to protest unfair labor practices. *Laborer's Local Union No. 204 v.* *NLRB,* 904 F.2d 715, 717 (D.C.Cir.1990). Protection of area standards is considered a "less central" § 7 right. *Id.*

*Lloyd Corp. v. Tanner,* 407 U.S. 551, 568, 92 S.Ct. 2219, 2228, 33 L.Ed.2d 131, 142 (1972).

In *Hudgens,* a shopping center manager told union picketers to leave or they would be arrested for trespass. 424 U.S. at 509, 96 S.Ct. at 1031, 47 L.Ed.2d at 200. Noting that the first amendment does not protect against this activity by a private entity, the Court rejected the picketers' claim of protection under the federal constitution. *Id.* at 521, 96 S.Ct. at 1037, 47 L.Ed.2d at 207.

In *Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741, 752 (1980), the Supreme Court upheld the California Supreme Court's decision that the California Constitution protects speech and petitioning, reasonably exercised, in privately owned shopping centers. Other states have considered whether their own constitutions afford greater free speech rights than the first amendment. The Wisconsin Constitution does not protect against abridgment of speech on private property. *State v. Horn,* 139 Wis.2d 473, 476, 407 N.W.2d 854, 855 (1987) (abortion protesters trespassed at medical clinic). The Massachusetts Constitution does not extend any further than the first amendment regarding speech on private property. *Commonwealth v. Noffke,* 376 Mass. 127, 134, 379 N.E.2d 1086, 1090 (1978) (union organizer convicted of trespass for soliciting on employer's parking lot).

The Michigan Constitution has been held not to prohibit property owners from denying access for free speech purposes. *Woodland v. Michigan Citizens Lobby,* 423 Mich. 188, 193, 378 N.W.2d 337, 339 (1985) (solicitation of signatures in mall areas of privately owned shopping centers). *Woodland* quotes as follows from *Lloyd:*

> [P]roperty [does not] lose its private character merely because the public is generally invited to use it for designated purposes. Few would argue that a freestanding store, with abutting parking space for customers, assumes significant public attributes merely because the public is invited to shop there. Nor is size alone the controlling factor. The essen-tially private character of a store and its privately owned abutting property does not change by virtue of being large or clustered with other stores in a modern shopping center.

*Id.* at 225–26, 378 N.W.2d at 354 (quoting *Lloyd,* 407 U.S. at 569, 92 S.Ct. at 2229, 33 L.Ed.2d at 143).

We conclude that defendants' free speech argument must fail under both the federal and Iowa Constitutions. As we observed in *State v. Elliston,* 159 N.W.2d 503 (Iowa 1968):

> Liberty can only be exercised in a system of law which safeguards order.... [T]he right of peaceful protest does not mean that everyone with opinions or beliefs to express may do so at any time and at any place. There is a proper time and place for even the most peaceful protest and a plain duty and responsibility on the part of all citizens to obey all valid laws and regulations.

*Id.* at 508 (quoting *Cox v. Louisiana,* 379 U.S. 559, 574, 85 S.Ct. 476, 485–86, 13 L.Ed.2d 487, 498 (1965)).

### III. *Whether the Access Road to Ryan's was a Public Way.*

■ Finally, we consider the claim of defendant Lacey that the access road to Ryan's was a public way. Unlike defendant Novak, whose activities took place in the parking lot, Lacey conducted his handbilling activities on the access road leading into the property. The land over which the access road passes is owned by Ryan's. Notwithstanding this fact, Lacey contends that the roadway was a public way, and he was therefore legally entitled to be present there.

Although evidence was presented which might support this contention, it was not a matter which was established as a matter of law. The district associate judge who heard the case rejected this claim on the facts. The review of this finding of fact by the district judge and by this court under Iowa Rule of Criminal Procedure 54(3) is not de novo. We conclude that the district associate judge's finding of fact was per-

missible within the scope of the evidence presented. We therefore reject defendant Lacey's contention that his activities took place on public property.

We have considered all issues presented and find no basis for overturning the convictions. The judgment of the district court is affirmed.

AFFIRMED.