**CITY OF WEST DES MOINES,**
**Appellee,**

v.

**Paul ENGLER and Deborah**
**Helt, Appellants.**

No. 00–0147.

Supreme Court of Iowa.

April 3, 2002.

Sally Frank, Drake University Legal Clinic, Des Moines, for appellants.

Gregory C. Sisk, Clive, and Thomas P. Slater of Meyer & Slater, West Des Moines, for appellee.

Randall C. Wilson, Des Moines, for amicus curiae Iowa Civil Liberties Union Foundation, Inc.

CARTER, Justice.

Defendants, Paul Engler and Deborah Helt, have been granted discretionary review of their simple-misdemeanor convictions for trespassing in violation of West Des Moines, Iowa Ordinance 5–2–2–3(b) (1998). They contend that their actions were protected as a right of free speech guaranteed by article I, section 7 of the Iowa Constitution. After reviewing the record and considering the arguments presented, we conclude that the distribution of leaflets in a privately owned shopping mall is not an activity protected as a right of free speech. Consequently, we affirm the judgment of the district court.

On December 24, 1998, defendants gathered with others near the entrance to the J.C. Penney store in the Valley West Mall and attempted to distribute leaflets to mall patrons. The leaflets were entitled "Sweatshop Products Sold at J.C. Penney, Van Heusen Grinch Steals Christmas in Guatemala" and contained therein were statements urging mall patrons to contact the Phillips–Van Heusen Corporation and the J.C. Penney store manager.

Mall safety officers requested that the defendants cease the distribution of the leaflets in the mall and move their protest to the public street surrounding the mall. Despite the request, defendants continued to distribute the leaflets. West Des Moines police officers made a second request that defendants cease distribution of the leaflets, but that request was also refused. Defendants were then arrested on charges of criminal trespass. The charges were submitted at a bench trial on stipulated facts. A district associate judge found defendants guilty of trespassing in violation of the local ordinance. Defendants next appealed to a district judge, who upheld their convictions.

Defendants assert that their convictions violate the right of free speech guaranteed to them by article I, section 7 of the Iowa Constitution. Their appeal is predicated entirely on state constitutional law. Undoubtedly, that path has been taken because the United States Supreme Court has rejected similar free-speech claims based on the First Amendment to the federal constitution. *See Lloyd Corp. v. Tanner*, 407 U.S. 551, 569, 92 S.Ct. 2219, 2229, 33 L.Ed.2d 131, 143 (1972). A substantial impediment also confronts defendants' free-speech claims under the state constitution as a result of our decision in *State v. Lacey*, 465 N.W.2d 537, 540 (Iowa 1991).

In *Lacey* union members were convicted of criminal trespass for distributing on the premises of a restaurant handbills that urged potential customers to boycott that establishment. In rejecting the defendants' claims that their activities were protected by the free-speech guarantees of the federal and Iowa constitutions, we discussed in detail the *Lloyd* decision of the

Supreme Court, which foreclosed their federal free-speech claims and then declared "[w]e conclude that defendants' free-speech argument must fail under both the federal and Iowa Constitutions." *Lacey*, 465 N.W.2d at 540.

Defendants urge that our *Lacey* decision is not conclusive of their free-speech rights under the Iowa Constitution because the argument they are making is premised on specific constitutional language not considered by this court in the *Lacey* opinion. Defendants note that the material portions of article I, section 7 of the Iowa Constitution provide:

> Every person may speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech, or of the press. [The balance of this clause pertains to the elements of actions for libel.]

Defendants argue that the first sentence in section 7 operates entirely independently from the second sentence and that the free-speech guarantee provided in the Iowa Constitution is not limited to abuses by state action. An argument similar to the one that defendants are making was presented to the Minnesota Supreme Court in *State v. Wicklund*, 589 N.W.2d 793 (Minn.1999), in a case involving protests against the fur trade at the Mall of America. The language of the Minnesota Constitution guaranteeing freedom of speech was nearly identical with that of the Iowa Constitution, which we have quoted. The Minnesota Supreme Court concluded that the constitutional language at issue here is, like its federal First Amendment counterpart, designed to protect against state action.

The Minnesota court in *Wicklund* noted that the language of the free-speech guarantees contained in the Iowa and Minnesota constitutions are not unique. At that time, the bills of rights of thirty-three other states contained language nearly identical to the Iowa and Minnesota free-speech guarantees. *Wicklund*, 589 N.W.2d at 799. A substantial majority of the courts in those states have interpreted this free-speech language as being coextensive with that of the First Amendment to the federal constitution. *See Fiesta Mall Venture v. Mecham Recall Comm.*, 159 Ariz. 371, 767 P.2d 719, 723 (1988); *Citizens for Ethical Gov't, Inc. v. Gwinnett Place Assocs.*, 260 Ga. 245, 392 S.E.2d 8, 9–10 (1990); *People v. DiGuida*, 152 Ill.2d 104, 178 Ill.Dec. 80, 604 N.E.2d 336, 344–45 (1992); *Woodland v. Michigan Citizens Lobby*, 423 Mich. 188, 378 N.W.2d 337, 347 (1985); *Dossett v. First State Bank*, 261 Neb. 959, 627 N.W.2d 131, 138 (2001); *S.O.C., Inc. v. Mirage Casino–Hotel*, 23 P.3d 243, 251 (Nev.2001); *SHAD Alliance v. Smith Haven Mall*, 66 N.Y.2d 496, 498 N.Y.S.2d 99, 488 N.E.2d 1211, 1215 (1985); *State v. Felmet*, 302 N.C. 173, 273 S.E.2d 708, 712 (1981); *Eastwood Mall, Inc. v. Slanco*, 68 Ohio St.3d 221, 626 N.E.2d 59, 62 (1994); *Stranahan v. Fred Meyer, Inc.*, 331 Or. 38, 11 P.3d 228, 243 (2000); *W. Pennsylvania Socialist Workers 1982 Campaign v. Connecticut Gen. Life Ins. Co.*, 512 Pa. 23, 515 A.2d 1331, 1339 (1986); *Charleston Joint Venture v. McPherson*, 308 S.C. 145, 417 S.E.2d 544, 548 (1992); *Southcenter Joint Venture v. Nat'l Democratic Policy Comm.*, 113 Wash.2d 413, 780 P.2d 1282, 1291 (1989); *Jacobs v. Major*, 139 Wis.2d 492, 407 N.W.2d 832, 836–37 (1987).

Defendants urge that the courts which have reached these decisions have not been faithful to the language of the constitutional provisions that were under consideration. They argue that the language of

article I, section 7 of the Iowa Constitution and of many other state constitutions create both a limitation against state action (the second sentence) and an affirmative protection against the abridgement of freedom of speech by other potential sources of interference (the first sentence). In rejecting a similar argument, the Michigan court in *Woodland* stated:

> The firmly established doctrine that constitutionally guaranteed individual rights are drawn to restrict government conduct and to provide protection from governmental infringement and excesses is not unique to the federal Bill of Rights. This has generally been the view with respect to state bills of rights as well.

*Woodland,* 378 N.W.2d at 344 (citing Rottschaefer, *American Constitutional Law* § 305 (1939); McClain, *Constitutional Law* § 205 (2d ed.1910); Cooley, *Constitutional Law* 219 (3d ed. 1898)).

The court in *Woodland* went on to opine that

> [i]f all civil rights, in the sense of rights which a person may assert against his fellow citizens, were to be incorporated in the constitution, the distinction between the constitution as fundamental law—defining the frame of government and the relation of the government to the citizen—and the general laws of the state—defining rights and obligations arising out private relationships—would be lost.

378 N.W.2d at 346. We agree with the position of the Michigan court and do not believe this interpretation does violence to the language of article I, section 7. Our interpretation is consistent with the language of the first two sentences of that clause if they are read *in pari materia.*

Defendants' principal policy argument as to why we should not continue to apply our *Lacey* decision is that places where people assemble today are different from the places where they assembled in times past. Defendants urge that, because people no longer gather in large numbers on public streets and sidewalks, those locations are no longer suitable places for the distribution of political leaflets. To be where the crowd is distributors of political leaflets must go to the malls. Assuming the accuracy of the premise on which this argument is based, it does not convert privately owned and operated business locations into public places. For that to occur, there must be, as the Minnesota court has recognized, "either a symbiotic relationship or a sufficiently close nexus between the government and the private entity so that the 'power, property and prestige' of the state has been in fact placed behind the challenged conduct." *Wicklund,* 589 N.W.2d at 802.

The Supreme Court recognized in *Lloyd:*

> [P]roperty [does not] lose its private character merely because the public is generally invited to use it for designated purposes. Few would argue that a freestanding store, with abutting parking space for customers assumes significant public attributes merely because the public is invited to shop there. Nor is size alone the controlling factor. The essentially private character of a store and its privately owned abutting property does not change by virtue of being large or clustered with other stores in a modern shopping center.

407 U.S. at 569, 92 S.Ct. at 2229, 33 L.Ed.2d at 143. We agree.

We have considered all issues presented and conclude that the judgment of the district court must be affirmed.

**AFFIRMED.**