# IN THE COURT OF APPEALS OF IOWA

No. 12-2275
Filed June 10, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**BASIL JAMAAL HILL,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Romonda D. Belcher (motion to dismiss and trial), District Associate Judge, and Richard G. Blane II (simple misdemeanor appeal), Judge.

A defendant challenges his conviction for criminal trespass for remaining on the Iowa State Capitol grounds after they were closed to the public. **AFFIRMED.**

Sally Frank of Drake Legal Clinic, for appellant.

Thomas J. Miller, Attorney General, Mary A. Triick, Assistant Attorney General, John P. Sarcone, County Attorney, and Linda Zanders, Assistant County Attorney, for appellee.

Heard by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, P.J.**

Basil Hill appeals his conviction for criminal trespass. He contends he was justified in remaining on the Iowa State Capitol grounds with other Occupy Iowa protestors after the hours of closure because they were exercising their rights to free speech and assembly under the United States and Iowa Constitutions. He also argues the district associate court should have consolidated the trials of several protestors, granted his motion for discovery, and denied the State's motion to amend the original complaint.

While the federal and state constitutions guarantee robust rights to free speech and assembly, those guarantees are not absolute. U.S. Const. amend. I; Iowa Const. art. I, §§ 7, 20; *see State v. Baker*, 688 N.W.2d 250, 255 (Iowa 2004); *State v. Lacey*, 465 N.W.2d 537, 540 (Iowa 1991). The State may impose reasonable restrictions on the time, place and manner of protected speech— even in traditional public forums. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Because the restrictions at issue here met those constitutional standards, we affirm the denial of Hill's motion to dismiss his trespass prosecution. We also deny relief on Hill's claims involving consolidation, discovery, and amending the complaint.

I.      **Background Facts and Proceedings**

On Sunday, October 9, 2011, an Iowa State Patrol officer arrested Hill for criminal trespass, a simple misdemeanor, in violation of Iowa Code section

716.7(2)(b) (2011).[1] The arrest occurred at 11:15 p.m., fifteen minutes after the grounds had closed to the public.

Hill and hundreds of other protestors had gathered at the state capitol starting at noon that day as part of the "Occupy Iowa" movement.[2] At 3:00 p.m., the protestors decided they wanted to stay at that location and formed a "legal committee" to look into obtaining a permit. A committee member spoke with an Iowa State Patrol officer and learned the capitol grounds closed at 11:00 p.m. The protestors also learned they could not obtain a permit to stay after that hour because the Department of Administrative Services (DAS), the state office that issued permits, was closed on weekends.

At 10:30 p.m. State Patrol Captain Mark Logsdon came to the capitol grounds and informed the protestors they were welcome to stay until 11:00 p.m., but they would have to leave at that time or face arrest. He told them again at 10:45 p.m. About twenty protestors stayed past 11:00 p.m. and were arrested for trespassing.

---

[1] This section defined trespass as:
> Entering or remaining upon or in property without justification after being notified or requested to abstain from entering or to remove or vacate therefrom by the owner, lessee, or person in lawful possession, or the agent or employee of the owner, lessee, or person in lawful possession, or by any peace officer, magistrate, or public employee whose duty it is to supervise the use or maintenance of the property.

Iowa Code § 716.7(2)(b) (2011).

[2] According to protestor and former state legislator Ed Fallon, the Iowans wanted to show solidarity with the Occupy Wall Street movement that started in New York City in September 2011 to express concern over corporate corruption.

Hill and his co-defendants filed a motion to dismiss their trespass charges, claiming the "curfew"[3] enforced at the capitol abridged their free speech and assembly rights. The motion asserted the curfew did not constitute a content-neutral time, place, and manner restriction. The motion also alleged the state regulations regarding permit applications were unconstitutional because they did not allow for emergency protests.

After holding a day-long evidentiary hearing, the district associate court denied the motion to dismiss. The court ruled from the bench that the motion to dismiss did not challenge Iowa Code section 716.7, and the court would not allow the defendants to "bootstrap their defense of justification arising from a claim of a violation of the constitutionality of an administrative process" of which they did not avail themselves. The court ruled the motion to dismiss was "not the proper avenue or remedy" to challenge the constitutionality of the administrative rules or their implementation.

---

[3] The parties refer to the capitol closure hours as a curfew. A curfew is defined as "a regulation that forbids people (or certain classes of them) from being outdoors between certain hours." Black's Law Dictionary 387 (7th ed. 1999); *see City of Maquoketa v. Russell*, 484 N.W.2d 179 (Iowa 1992) (holding curfew ordinance unconstitutional where all minors were prohibited from being on streets, sidewalks or public places within the city between 11 p.m. and 6 a.m.). The word curfew is derived from Old French "couvre feu" that was a command to "cover the fire" when the bell rang at a fixed hour. Bryan A. Garner, *Garner's Dictionary of Legal Usage* 239 (3d ed. 2011). Because the term curfew evokes the idea of a more sweeping prohibition on movement throughout a city, we will not use it in our analysis. We will instead refer to the hours of capitol grounds closure at issue here.

Hill's trespass prosecution proceeded to trial with one co-defendant.[4] Before trial, the State filed a motion in limine seeking to prevent Hill and his co-defendant from offering evidence regarding their "free speech rights" or arguing that "free speech rights" could constitute justification under section 716.7. Hill resisted, citing *State v. Williams*, 238 N.W.2d 302, 308 (Iowa 1976), for the proposition that freedom of speech could constitute justification under the trespass statute. The district associate court denied the State's motion in limine, reasoning that "without justification" was an element of the State's case and the defendant was allowed to present his "individual reasons for being on the property." The court "tempered" its ruling by precluding the defendants from discussing the "nature and cause" of the Occupy Iowa movement.

At trial, the State presented the testimony of Iowa State Patrol Captains Mark Logsdon and Mike Winter, as well as DAS deputy director Caleb Hunter. The defense did not offer any evidence.

At the close of trial, the court instructed the jurors that the phrase "without justification" as used in the marshalling instruction protected entry onto public property "for the purpose of exercising one's right to free speech, assembly, or to petition the government for a redress of grievances." The court also instructed the jury that "[t]he right of peaceful protest does not mean that everyone with opinions or beliefs to express may do so at any time and at any place." The court further informed the jurors that the State may regulate speech in public

---

[4] We will discuss the pretrial motions seeking to amend the complaint, to consolidate defendants, and for discovery in more detail below when we address the defendant's assignments of trial error.

forums if (1) the regulations are content-neutral, (2) the regulations are reasonable time, place, and manner restrictions narrowly tailored to serve an important government interest; and (3) the regulations leave open adequate alternative places for speech but need not be the least restrictive or intrusive means. The jury found Hill guilty of criminal trespass.

Hill appealed his simple misdemeanor conviction to the district court under Iowa Rule of Criminal Procedure 2.73(1). Hill argued the district associate court erred in not deciding the constitutional validity of closing the capitol grounds. Hill also argued the court erred in allowing the closure to prove the trespass charge because the implementation of that closure did not comply with the state administrative rule requiring the hours to be posted. Hill further challenged the district associate court's denial of his motion to consolidate, motion for discovery, and the court's granting of the State's motion to amend the complaint to add an additional trespass alternative. The district court denied Hill's appeal, finding the hours of closure for the capitol grounds and the permit rules did not "unduly infringe on First Amendment freedoms."

Hill then sought discretionary review under Iowa Code section 814.6(2)(d), which the Iowa Supreme Court granted on February 7, 2013. After briefing was completed, on March 2, 2015, the supreme court transferred the case to us.

## II.    Scope and Standards of Review

Hill raises several issues, which require us to apply varying standards of review. His challenge to the denial of his motion to dismiss on constitutional

grounds calls for de novo review in light of the totality of circumstances. *See Baker*, 688 N.W.2d at 252; *State v. McKnight*, 511 N.W.2d 389, 391 (Iowa 1994).

We review Hill's challenges to the district associate court's rulings on consolidation and discovery for an abuse of discretion. *See State v. Clark*, 814 N.W.2d 551, 563 (Iowa 2012); *State v. Hajtic*, 724 N.W.2d 449, 457 (Iowa 2006). "To establish an abuse of discretion, a defendant must show sufficient prejudice to constitute denial of a fair trial." *State v. Leutfaimany*, 585 N.W.2d 200, 203 (Iowa 1998). We review a ruling allowing the State to amend a criminal charge for errors at law. *Cf. State v. Maghee*, 573 N.W.2d 1, 5 (Iowa 1997) (analyzing rule 2.4(8) for amending trial information).

## III.    Motion to Dismiss

Hill's foremost challenge is to the constitutionality of his conviction.[5] In his motion to dismiss, he claimed the trespass prosecution violated the First Amendment of the United States Constitution[6] and article I, sections 7 and 20 of the Iowa Constitution.[7]

---

[5] Hill's counsel asserted a statutory ground for relief at oral argument, contending the restrictions on public use of the capitol complex to the hours of 6 a.m. to 11 p.m. was not "posted in conspicuous places" on the grounds as required by Iowa Code section 8A.322(3) and state regulations. *See* Iowa Administrative Code Provision 11-100.4(13). The State acknowledged the lack of posted hours could be problematic if Hill had been charged with violating section 8A.322(3). But because Hill was charged with trespassing under section 716.7(2)(b) and had actual notice from the state patrol that he was not allowed to stay past 11:00 p.m., we reject his statutory claim.

[6] The First Amendment to the United States Constitution prohibits Congress from making any law "abridging the freedom of speech." U.S. Const. amend. I. The First Amendment is binding on the states through the Fourteenth Amendment. U.S. Const. amend. XIV; *Gitlow v. New York*, 268 U.S. 652, 666 (1925).

[7] Section 7 states: "Every person may speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech." Section 20 states: "The people have the right

On appeal, Hill argues the Iowa Constitution "goes further" than the United States Constitution in guaranteeing the right to petition the government. Hill contends he and his fellow Occupy Iowa protestors were assembling on the capitol grounds to make their views known to their representatives. But Hill does not advocate for Iowa courts to adopt a different test under the state constitutional provisions than the United States Supreme Court has applied under the First Amendment. Our supreme court has generally viewed the federal and state constitutional provisions as coextensive. *See, e.g.*, *City of West Des Moines v. Engler*, 641 N.W.2d 803, 805 (Iowa 2002); *State v. Milner*, 571 N.W.2d 7, 12 (Iowa 1997); *Des Moines Register & Tribune Co. v. Osmundson*, 248 N.W.2d 493, 498 (Iowa 1976). Accordingly, we will interpret the scope of the state constitutional provisions to track with the federal interpretations of the First Amendment.

On appeal, Hill claims the district associate court erred in denying the motion to dismiss for two reasons. First, he argues the hours of closure on the state capitol grounds constituted a "prior restraint" on free speech without a compelling state interest. Second, he attacks the process for obtaining a permit to remain on the grounds after hours as unconstitutional. He contends the permit scheme "gives unbridled and absolute power to an issuing authority"—namely the DAS—and does not accommodate the constitutional requirement for

---

freely to assemble together to counsel for the common good; to make known their opinions to their representatives and to petition for a redress of grievances."

spontaneous protests. Before turning to the merits of Hill's claims, we address the question of error preservation.

## A. Preservation of Error

The State advances several error preservation arguments. First, the State argues the administrative rules concerning how permits are issued "never came into play." Because Hill did not apply for a permit before Sunday, October 9, 2011, neither the DAS nor the state patrol exercised any discretion in regard to his right to remain overnight on the capitol grounds. Accordingly, the State argues Hill does not have standing to challenge the constitutionality of the permit scheme. We agree Hill lacks standing to attack administrative requirements that were not applied to him. *See generally State v. Henderson*, 269 N.W.2d 404, 405 (Iowa 1978).

But one aspect of the permit scheme did affect Hill's rights and is properly before us—that is the inability to apply for a permit on weekends or after work hours. We will discuss that aspect of the permit scheme below as it impacts the right to spontaneous protests.

Second, the State argues Hill did not preserve error on his claims concerning the denial of his motion to dismiss "because he chose below to submit this question to the jury." The State contends a judge and not a jury should have determined "whether the park's nightly closure is a constitutionally valid time, place, or manner restriction because it is a legal question rather than a factual question." The State argues the proper way for this case to have proceeded was for the district associate court to have given a preliminary ruling

on the constitutionality of the trespass prosecution. If the court decided the closure was a constitutional restriction on expressive conduct, the State contends Hill should have been precluded from arguing to the jury he was not guilty because he was acting "with justification." *See Williams*, 238 N.W.2d at 308 (holding phrase "without legal justification" expressly allowed and protected entry on public property for the purpose of reasonably exercising First Amendment rights). But because Hill sought a jury determination of the constitutional issue, the State urges he waived this appellate challenge to the denial of his motion to dismiss.

While we agree it was unusual for the jury to be instructed on the constitutional free speech issues, we find no authority for concluding Hill's successful request to proceed in that manner constituted a waiver of his legal arguments properly raised in the motion to dismiss.

Third, the State argues Hill's challenge to the constitutionality of the administrative rules is not preserved because the district associate court did not address the merits of his claims in denying the motion to dismiss and Hill did not file a motion under Iowa Rule of Civil Procedure 1.904(2). Generally, a motion for enlargement is necessary to preserve error when the district court fails to resolve an issue, claim, or legal theory properly submitted for adjudication. *See Meier v. Senecaut*, 641 N.W.2d 532, 539 (Iowa 2002). In this case, because the district court considering the simple misdemeanor appeal did reach the merits of Hill's constitutional claims, we have that ruling available for our review.

**B. Hours of Closure**

By state regulation, the capitol grounds are open for seventeen hours each day—from 6:00 a.m. to 11:00 p.m.—and are closed to the public for the remaining seven hours overnight. Members of the public may arrange for a permit to stay after 11:00 p.m., but they can only apply for a permit from DAS during normal working hours Monday through Friday.

Hill contends the ban on around-the-clock protests on the state capitol grounds, in the absence of a permit, violated his right to free speech and assembly. Our analysis of that contention begins with some points of common ground between the parties. Both sides agree the Occupy Iowa protestors were engaging in expressive conduct protected by the First Amendment and the parallel provisions of the Iowa Constitution. *See Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984). Both sides agree the state capitol complex is a "quintessential public forum" calling for the highest level of scrutiny when restrictions on expression take place there. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). And both sides agree: "In such places, the government's ability to permissibly restrict expressive conduct is very limited: the government may enforce reasonable time, place, and manner regulations as long as the restrictions are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *United States v. Grace*, 461 U.S. 171, 177, (1983) (internal citations omitted). For the hours of closure on the capitol grounds to

pass muster under this high level of scrutiny, all three elements must be satisfied. We will address each element in turn.

### 1. Content neutral

The principal inquiry in determining content neutrality is whether the government has regulated speech because of a disagreement with the message it conveys. *Ward*, 491 U.S. at 791. A content-neutral regulation addresses "only the time, place, or manner of speech." *State v. Musser*, 721 N.W.2d 734, 743 (Iowa 2006).

In this case, the State presented evidence the overnight closure applied to all members of the public who had not prearranged for a permit. The rule allowed the DAS and state troopers to plan ahead for security personnel and to take measures to ensure proper sanitation and safety for members of the public when a permit was obtained.

On appeal, Hill claims it was questionable whether the closure hours were content neutral in practice, citing testimony at the motion to dismiss hearing that one witness regularly walked across the grounds to take photographs of the capitol after 11:00 p.m. and was never told to leave by state troopers. By contrast, Captain Logsdon testified if troopers working the overnight shift encounter people on the capitol complex, they remind them of the closure hours and tell them they "need to move on." The captain testified it was his job to "treat everyone the same" regardless of the content of their communication and he harbored no animosity toward Hill's group or its message.

The overnight closure of the state capitol grounds does not discriminate based on a certain message or form of expression; it restricts the time, place or manner of all expressive and non-expressive conduct alike. Despite the defense evidence suggesting selective enforcement, we find the hours of closure to be content-neutral restrictions. *See Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322 (2002) (ordinance denying all activity is content-neutral). Courts from other jurisdictions have reached similar conclusions when addressing hour restrictions for public forums. *See, e.g.*, *Occupy Sacramento v. City of Sacramento*, 878 F. Supp. 2d 1110, 1117–18 (E.D. Cal. 2012) (noting fact that city ordinance closing parks from 11:00 p.m. to 5:00 a.m. applies to "all park users who have not obtained a permit to remain in the park supports the conclusion that it is content-neutral"); *City of Chicago v. Alexander*, 24 N.E.3d 262, 271-272 (Ill. App. Ct. 2014) (holding ordinance prohibiting the public from remaining in Grant Park between 11:00 p.m. and 6:00 a.m. was content neutral); *Cleveland v. McCardle*, 12 N.E.3d 1169, 1174 (Ohio 2014) (finding ordinance prohibiting persons from remaining in the public square between 10:00 p.m. and 5:00 a.m. without a permit to be content neutral).

### 2. Narrowly tailored to significant government interests

The regulation also must be narrowly tailored to a significant government interest. Narrow tailoring means the regulation is not "substantially broader than necessary" to achieve the State's legitimate end. *See Ward*, 491 U.S. at 802. The regulation does not have to be the least restrictive or least intrusive means of achieving the State's legitimate content-neutral interests. *Id.* at 798.

The State argues it has a legitimate interest in maintaining the good condition of the capitol grounds so that they may continue to be enjoyed by the general public. The State also asserts an interest in ensuring no one is injured or placed in harm's way while on the grounds. The State contends limiting middle-of-the-night access to the grounds serves those interests because it guards against purposeful or inadvertent damage to the property and allows for proper daytime supervision.

Hill argues the hours of closure are not narrowly tailored because they are "an outright ban on overnight protests unless a group can obtain a permit which can be arbitrarily denied." The State counters by citing *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 296–97 (1984). In *Clark*, the United States Supreme Court rejected a constitutional challenge to the prohibition against camping on the national mall, finding the government had a substantial interest in "conserving park property, an interest that is plainly served by, and requires for its implementation, measures such as the proscription of sleeping that are designed to limit the wear and tear on park properties." 468 U.S. at 299. The State argues the overnight closure of the Iowa capitol grounds at issue here is even more narrowly tailored than the camping ban in *Clark* because people who wish to stay overnight on the state capitol grounds may apply for a permit to do so.

We agree with the State that seven hours of overnight closure of the capitol grounds was a measure narrowly tailored to significant government interests. Courts from other jurisdictions considering the nightly closure of public

places have rejected constitutional challenges similar to Hill's issue. *See Michigan Up & Out of Poverty Now Coalition v. State*, 533 N.W.2d 339, 346 (Mich. Ct. App. 1995) (finding closure of Michigan capitol grounds from 11:00 p.m. to 8:00 a.m. to be narrowly tailored to the government's interest in protecting the capitol grounds and the safety of those who use them); *see also Occupy Sacramento*, 878 F. Supp. 2d at 1120 (holding park closure each night for six hours was narrowly tailored to government interest in protecting parks from "overuse and unsanitary conditions"); *Alexander*, 24 N.E.3d at 274 (finding use of city parks between 11:00 p.m. and 6:00 a.m. would "impede the city's ability to achieve its goals of maintenances, preservation and crime reduction"); *McCardle*, 12 N.E.3d at 1176 (holding city's interests in "safeguarding public health, protecting against violence and criminal activity, and preserving the Public Square would be achieved less effectively without the enactment and enforcement" of Cleveland ordinance limiting late night activity without a permit). We are persuaded by the reasoning in those cases.

### 3. Open ample alternative channels of communication

We now turn to the question of open ample alternative channels of communication. A government regulation leaves open such channels where it "does not attempt to ban any particular manner or type of expression at a given place or time." *See Ward*, 491 U.S. at 802. The hours of closure at issue here do not foreclose any particular manner or type of expression on the capitol grounds. The grounds are open seventeen hours a day, 365 days a year. A desire to stay after hours only requires the users to seek a permit. Hill and his

fellow protestors had a full opportunity during the open hours to voice their grievances on the capitol grounds. The overnight closure did not deny them an adequate means of sending their message. *See Occupy Sacramento*, 878 F. Supp. 2d at 1121; *Michigan Up*, 533 N.W.2d. at 346.

To recap, we find the overnight closure of the state capitol grounds was a reasonable time, place, and manner restriction because the regulation was content-neutral, narrowly tailored to serve a significant government interest, and left open ample alternative channels of communication.

### C. Availability of Permit Application Process

Hill argues his constitutional right to spontaneously protest overnight on the capitol grounds was thwarted by the absence of a provision in the Iowa administrative code for obtaining a permit on short notice. DAS deputy director Caleb Hunter testified at the motion to dismiss hearing that his department did not have a mechanism in place to process permit applications on the weekend. He testified permit applications are accepted during regular work week hours and typically take about one day to process. Hill asserts on appeal: "If a group wants to protest over an event that has recently occurred, a permit scheme must allow that kind of spontaneous action."

The State responds that assuming spontaneity may sometimes play a role in protected speech, Hill's situation does not fall into that category. The State points out Hill and his fellow protestors were expressing solidarity with a movement that had been ongoing for nearly a month at the time of his arrest. The record did not reveal any sudden events calling for an immediate response,

according to the State. The district court also was unsympathetic with Hill's spontaneity argument, highlighting that the Sunday meeting of the Occupy Iowa group had been scheduled earlier in the week when a permit could have been sought. The district court wrote: "As the saying goes—'Your lack of planning does not create an emergency.'"

We recognize the timing of speech, especially political speech, is often crucial to its resonance. *See N.A.A.C.P. v. City of Richmond*, 743 F.2d 1346, 1356 (9th Cir. 1984) ("A spontaneous parade expressing a viewpoint on a topical issue will almost inevitably attract more participants and more press attention, and generate more emotion, than the 'same' parade twenty days later."). But it is also reasonable for a government agency to need time to process permit applications. *See Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1037 (9th Cir. 2009) (holding "a twenty-four hour advance notice requirement for a spontaneous event is not categorically unconstitutional"). The constitutionality of the delay in issuing a permit will depend on factors such as "the definition of a spontaneous event and the availability of means of expression." *Id.*

In the situation at issue, we do not find Hill's inability to apply for a permit from DAS on the Sunday afternoon in question amounted to a justification for remaining on the capitol grounds after being notified by the state patrol of the 11:00 p.m. closing time. Hill and his fellow protestors gathered at noon for a planned rally. For eleven hours they were allowed to protest outside the capitol without any restraint. While we might be able to conceive of an instance where

the limited availability of the DAS permit process impinges too greatly on the spontaneity of a political protest, that hypothetical situation is not before us today. *See Young v. Am. Mini Theatres, Inc.,* 427 U.S. 50, 58–59 (1976) (declining to consider arguments in the abstract about the uncertain effect of the ordinance on the First Amendment rights of other litigants).

We do not find Hill's trespass conviction constitutionally invalid because of his inability to apply for an after-hours permit from DAS during the weekend.

## IV.    Defense Motion to Consolidate

Hill and twelve other defendants filed a motion to consolidate their trials. Hill's counsel argued consolidation would serve judicial efficiency, would be more convenient for the parties and witnesses, and would save counsel time by not requiring her to prepare for and participate in multiple trials.[8]  The State resisted. After hearing arguments, the district associate court rejected the notion that joining thirteen defendants into one trial would be judicially efficient.  The court envisioned an unwieldy pool of potential jurors.  Accordingly, the court denied the motion to consolidate all of the codefendants' cases into a single trial.[9]

At issue is Iowa Rule of Criminal Procedure 2.71, which provides:

> Two or more defendants who are alleged to have participated in the same transaction or occurrence or series of transactions or occurrences from which the offense or offenses charged arose may

---

[8] On appeal, Hill argues the court's refusal to consolidate all of the trials resulted in inconsistent verdicts, which he contends we can consider because they are a matter of public record.  We decline to consider this ground for consolidation because it was not raised at trial.

[9] The ruling did allow the defendants to be tried in pairs.  Hill sought to challenge this ruling by interlocutory appeal, but the Iowa Supreme Court denied the request.

be tried jointly whether the defendants are charged in one or more complaints.

This rule on joinder for simple misdemeanor offenses is permissive. Such rules vest wide discretion in the trial court to decide if consolidation is appropriate. *Cf. State v. Belieu*, 288 N.W.2d 895, 900 (Iowa 1980) (analyzing severance rule for indictable offenses).

We find the district associate court properly exercised its discretion in denying the motion to consolidate the trials of all thirteen defendants. On appeal, Hill does not contend he experienced ineffective representation or an unfair jury selection process as a result of the separate trials. Hill opted not to call defense witnesses, but made no record that any witnesses were unavailable. On this record, Hill does not show he was prejudiced by the denial of the motion to consolidate all of the codefendants' trials. Furthermore, even if the court had abused its discretion, the parties agree no viable relief exists for Hill because it is impossible for us to remand for a joint trial.

## V.    Defense Motion for Discovery

On December 1, 2011, Hill filed a motion for discovery of information from the prosecution, including photographs, videotapes, and other recordings by law enforcement. On December 9, 2011, the district associate court issued a written order stating: "[H]aving heard arguments of counsel and reviewed relevant case law, [the court] hereby finds that the State has complied with the request for discovery and production of evidence. Any additional request for discovery or production of evidence is denied for the reasons stated forth on the record."

Hill did not provide a transcript of the discovery proceedings as part of the record in this appeal. Hill contends the short argument before the court at the hearing on his motion for discovery was preserved in a digital recording and is available to the appellate courts just as it was available to the district court. We disagree. The Iowa Supreme Court ordered Hill's counsel to arrange for a court reporter to transcribe the proceedings necessary to Hill's appellate arguments. Because the defense did not provide a transcript of the discovery proceedings, we deem this issue waived. *See State v. Ludwig*, 305 N.W.2d 511, 513 (Iowa 1981) ("It is defendant's obligation to provide this court with a record affirmatively disclosing the error relied upon.").

## VI.    State's Motion to Amend Complaint

The original complaint, filed October 10, 2011, charged Hill with criminal trespass under Iowa Code section 716.7(2)(b) [now renumbered as section 716.7(2)(a)(2)] (defining trespass as remaining upon property without justification after being requested to vacate). On April 6, 2012, the State filed a motion to substitute a charge under the alternative in section 716.7(2)(a) [now renumbered as section 716.7(2)(a)(1)] (defining trespass as entering property without express permission with intent to commit a public offense) for the alternative in section 716.7(2)(b). The district associate court held a hearing on the State's motion on April 12, 2012. The April 12 hearing was not transcribed for this appeal. It appears from a handwritten notation on the preliminary complaint that the district associate court allowed the State to add, rather than substitute, the second trespass alternative.

As with the discovery issue above, our ability to assess Hill's claim is hindered by the absence of a transcript showing the arguments urged before the district associate court. Because Hill has not provided us with an adequate record of the claimed error, we conclude the issue is not properly preserved for our review.

Even if we were to rely on the district court's summary of the parties' arguments based on that court's opportunity to listen to the digital recording, we would still find the arguments currently raised by Hill to be unpreserved. Hill insists the amendment had "no factual basis" and questions the prosecutor's ethics in moving to add the trespass alternative that required proof of the defendants' intent to commit a public offense with no evidence to support the allegation. The district court stated it could not "find anywhere that the Defendant raised this issue at the hearing on the motion to amend." The district court could not determine from its review of the record that the prosecution lacked a good faith belief that a factual basis existed to request the amendment. Relying on the district court's rendition of the arguments raised in the simple misdemeanor proceedings, we agree Hill's claim concerning the amendment of the complaint is not properly preserved.

**AFFIRMED.**